GAMACHE *et al.*, Plaintiffs in Error, *vs.* PIQUIGNOT *et al.*, Defendants in Error.

1. It is the settled course of decision in this state, that a claimant to land under the act of congress of 1812, did not lose his land by a failure to prove up his claim before the recorder of land titles under the act of May 26, 1824, but may establish his claim in the courts of the country, by proof of cultivation and possession prior to December 20, 1803. But if the recorder who took the proof under the act of 1824, failed to issue a certificate of confirmation, or to include the claim in his list furnished to the surveyor general, neither a certificate of confirmation, nor any other document issued by his successor in office, many years afterwards, upon an inspection of the proof taken before him, is any evidence of title ; certainly not, when the acts of the recorder issuing the documents are not recognized by the United States government.

2. The affidavits taken before Recorder Hunt, under the act of 1824, are not competent evidence to establish the facts therein testified to.

3. A survey is not admissible in evidence, unless it has been duly approved and recorded, in accordance with the practice in the office of the surveyor general.

4. Under the act of 1812, the cultivation of part of a tract of land, under claim of the whole, is a cultivation of the whole tract.

5. Where an instruction given, when taken by itself, is erroneous, but is properly qualified by another instruction given, the judgment will not be reversed.

*Error to St. Louis Circuit Court.*

*N. & S. A. Holmes,* for plaintiffs in error. 1. The certificate of confirmation of the recorder of land titles, dated January 22, 1839, was erroneously excluded from the jury. It was *prima facie* evidence of title, and ought to have prevailed, until the defendants had shown a prior or a superior title, or at least, until they had disproved the facts necessary to bring this claim within the operation of the act of June 13, 1812. Neither the certificate, nor the facts of which it is evidence, can be questioned by one in possession merely. *Montgomery* v. *Landusky,* 9 Mo. Rep. 714, 718. The certificate proves that a grant was made by the act of 1812. *Janis* v.

Gamache et al. *v.* Piquignot et al.

*Gurno,* 6 Mo. Rep. 330. *Hunter* v. *Hemphill,* 6 Mo. 106. *Sarpy* v. *Papin,* 7 Mo. 503. That the certificate was not issued until January 22, 1839, is no valid objection. The powers and duties conferred by the act were conferred, not upon Theodore Hunt, but upon the recorder of land titles, a perpetual officer ; and no limit was prescribed by the act, within which the right of the claimant to apply for a certificate (after proof made within the eighteen months) or the power of the recorder to issue it was to cease. In the case of *Macklot* v. *Dubreuil,* 9 Mo. Rep. 489, a certificate issued in 1842 was held a *prima facie* title. 2. The certified extract from the surveyor general's list was competent evidence. *McGill* v. *Somers,* 15 Mo. Rep. 80–7. 3. The certified extract from the registry of certificates in the recorder's office, was competent evidence. *McGill* v. *Somers,* 15 Mo. Rep. 80. *Biehler* v. *Coonce,* 9 Mo. 351. *Roussin* v. *Parks,* 8 Mo. 544. 4. The fact that this claim had been omitted in the first list transmitted by Recorder Hunt, and that it was not in fact reported to the surveyor general until March 12, 1839, has no legal effect upon the title, or any right of the claimant under the act of 1824, upon the validity of the above mentioned documents, nor upon their admissibility in evidence. The act of 1824 fixed no limit within which the recorder must make his decision upon the proof taken within the eighteen months prescribed, nor within which his power to issue the certificate should cease. The second clause of the third section of that act imposed upon him a mere ministerial duty, not intended to be a condition precedent to the issuing of a certificate, nor to any right of the claimant. Parties are not to be prejudiced by the delays and omissions of mere ministerial officers and government agents. *Perry* v. *O'Hanlon,* 11 Mo. 589, 595. *Taylor* v. *Brown,* 5 Cranch, 234. The certificate, containing an accurate description of the location, extent and boundaries of the lot, so that any surveyor can find them, was all the evidence of title the claimants needed, and no public survey was necessary for them. *Ott* v. *Soulard,* 9 Mo. 603–4. *Me-*

nard's heirs v. *Massey*, 8 How. 293. *Smith* v. *United States*, 10 Peters, 338. *Chouteau* v. *Eckhart*, 2 How. 344. *United States* v. *Lawton*, 5 How. 10. The object of the act of 1824 was not to give titles to claimants, but to get information for the use of the land office ; and no limit of time was fixed either by the letter or spirit of the act, beyond which, the information obtained by the recorder, by proof within the eighteen months, should not be reported by him to the surveyor general. When on the 15th of October, 1827, nearly two years after the eighteen months had expired, the recorder furnished a list of claims which he then supposed to contain all, and when, at the several dates thereafter down to 1839, the omissions of the first list had been supplied, and the errors corrected, by the transmission of supplementary lists or reports, the law had then only, and not before, been substantially complied with. If it were at all material whether the omission of the claim by Recorder Hunt was by accident or design, there is no evidence that he ever decided against this claim ; on the contrary, the effect of the evidence is to show that it had been accidentally overlooked in transcribing the list. The omission and delay have prejudiced nobody. This lot has never been set apart for schools as a vacant lot, nor would it have been included in the survey of the commons, if the commons belonging to the village had been surveyed *according to their claim and confirmation*, as the law directed, nor if the surveyor, as he ought, had consulted the records of the recorder's office. 5. The certified extract from Hunt's minutes was competent evidence. This has often been decided by this court. 6. The seventh instruction asked for by plaintiffs was erroneously refused, and the second instruction asked for by defendants was erroneously given. This survey No. 120 was made by authority of the United States by a deputy surveyor, duly authorized, and a plat and description having been made out in form, and the survey having been examined and approved by the surveyor general, it was binding on the United States, until set aside by competent authority, though not yet recorded. *Mc-*

*Gill* v. *Somers*, 15 Mo. 80. *Boyce* v. *Papin*, 11 Mo. 25. *Jourdan & Landry* v. *Barrett*, 4 How. 169. *Menard's heirs* v. *Massey*, 8 How. 313. *Taylor* v. *Brown*, 5 Cranch, 234. *Harris* v. *Monks*, 2 S. & R. 560. *Griffith* v. *Funkhouser*, Pet. C. C. R. 422. The surveyor general had no other function to perform than to survey the *calls and description* of the claim, as reported to him by the recorder ; he is not a judicial officer to decide upon the validity of one survey against another. *Boyce* v. *Papin*, 11 Mo. 25. It was proved that this survey had been correctly executed. The recording of a survey is a mere matter of regulation in the office, for the convenient preservation of the survey, and not essential to its validity. This survey was good *prima facie* evidence of the location, extent and boundaries of the plaintiffs' claim, against any opposing title, not to be disputed at all by the defendants until they had shown some title to the same land. *McGill* v. *Somers*, 15 Mo. 87. *Boyce* v. *Papin*, 11 Mo. 25. 7. Instruction No. 5 for the defendants was erroneously given. It was contradictory to the instructions given for the plaintiffs, and was calculated to mislead the jury. 8. The title attempted to be set up by the defendants · as commons was properly cut off from the consideration of the jury by the court, on a comparison of titles. 9. The third instruction for plaintiffs was properly given, the defendants having given no such evidence of adverse possession of the land in controversy for twenty years prior to the commencement of this suit, as amounted in law to a disseisin of the legal representatives of Gamache. Possession by disseisin must be an actual, continued, visible, notorious and hostile possession. *Macklot* v. *Dubreuil*, 9 Mo. 477, 490. 4 Mass. 416, 418. 4 Kent, 446, and note (*a.*) 1 Mass. 483, 488. 3 Met. 129. 2 J. R. 230. 14 Pick. 224. Áng. on Lim. 410, §11 ; 416, §13, §15, §16, §17, §23, §30, §34.

*C. C. Whittelsey*, for same.

*R. M. Field*, for defendant in error. I. The proceedings of Recorder Conway, in 1839, were merely null, and afforded

no evidence of title whatever. 1. By the provisions of the act of 26th May, 1824, the proof before the recorder must be made in *eighteen* months. 2. The duty of taking the proof in its nature is judicial, as this court has decided. 3. The evidence of a compliance with the act is the certificate of the recorder for the time being, and his list of claims proved, returned to the surveyor general and the commissioner. 4. The act requires no recorded or written proof before the recorder, and the circumstance that affidavits were taken by Hunt, touching the Gamache claim, is no evidence that he considered it as proved. 5. On the contrary, the circumstance that the claim was not entered on his list is decisive to show that he was not satisfied with the testimony. 6. The abuses to which the practice of Recorder Conway will lead, are manifest. If Hunt's list may be altered after fourteen years have elapsed, alterations may be made at any distance of time ; if future recorders may supply fancied omissions, they may strike out such claims as they may regard as erroneously entered ; if they can thus deal with the list of Hunt, they can do the same with Bates' confirmations, and the numerous land titles depending on the action of the recorders of former days will be at the mercy of officers, selected, not for their capacity to judge of the proofs of titles, but for their fidelity in taking care of books and papers. 7. The head of the land department, on the appeal of the plaintiffs, has decided that the proceedings of Conway were of no avail under the law. See the letter of commissioner Butterfield. II. The evidence of the title of Carondelet to commons is preserved in the record and is complete. 1. There was an express reservation by the Spanish governor, Trudeau, of the commons tract, in answer to John B. Gamache, the very person whose representatives now claim the lot which was denied by Trudeau. 2. A Spanish survey of the commons was commenced, but, by accident, not completed. 3. The western line of the commons, through its whole extent, was marked in Spanish times by a line of blazed trees. 4. There is proof of a continued user of the commons from

Spanish times, without interruption down to the date of the sub-division and sale of the commons. 5. A survey by Rector, under the authority of the United States, as early as 1817, conforming to Soulard's survey and the line of blazed trees. 6. An approved and recorded official survey by Brown, as early as 1834. It may be added, that all the objections, taken at the land office to Brown's survey, have been withdrawn, and that Brown's survey is regarded at Washington, at the present time, as it has all along been regarded by the land officers here, as she final and conclusive designation of the commons, under the act of 26th May, 1824. III. Whatever may have been the original merits of the titles of the parties, the plaintiffs are now barred by force of the statute of limitations, December 17, 1818. Rector's survey was made in the most public manner, as early as 1817, corners set and lines marked on the ground. The sons of J. B. Gamache, through whom plaintiffs derive their title, were inhabitants of Carondelet, and must have known of this survey. The testimony in the record shows that one of them was present at the survey. They made no objection and set up no adversary claim. The user of the tract, as commons, claiming up to the lines, was uninterrupted for more than twenty years after Rector's snrvey. This user was open and notorious. The general rule is, that where a party is in the possession, under a *bona fide* but defective title, he will hold to the boundaries of his title, though his actual possession may not extend so far. *Simpson* v. *Downing*, 23 Wend. 316. *Saxton* v. *Hunt*, 1 Spen. 487. *Fitch* v. *Mann*, 8 Barr, 503. *Bank* v. *Sawyers*, 2 Strobh. 24. And it is an important circumstance that the lines claimed by the party are marked on the ground, or otherwise visible and known. *Bell* v. *Hartly*, 4 Watts & S. 32. *Thompson* v. *Milford*, 7 Watts, 442. *Pace* v. *Staton*, 4 Iredell, 32. The case is still stronger if the boundary is actually known by the other party and acquiesced in or not disputed. *Allen* v. *Johnson*, 2 McMullan, 495. To constitute a possession under the statute of limitations, a fence or other inclosure is not necessary. *Ewing*

v. *Burnet*, 8 Peters, 41. Entering upon the land and digging ore from time to time, under claim of title, is sufficient. *West* v. *Lanier*, 9 Humph. 762. So, making roads, cutting trees and manufacturing shingles in a cypress swamp, is sufficient adversary possession. 1 Iredell, 56. So, making a road upon the land which the party claims under a deed, in order to get off the timber, will be a sufficient possession of the whole land. *Spear* v. *Ralph*, 14 Vt. Rep. 404. So, making turpentine on the land from year to year, is sufficient possession to claim the benefit of limitation. *Bynum* v. *Carter*, 4 Iredell, 310. So, the use of a meeting house, one day in seven, for religious worship, will be a sufficient continued possession. *Macon* v. *Shepard*, 2 Humph. 335. A corporation may acquire title by adverse possession. *Rehoboth* v. *Carpenter*, 23 Pick. 131. And it may set up the bar of statute of limitations, though incapable itself of holding lands. 4 Paige, 178. 24 Wend. 587. 16 Pet. 493. Where an island was subject to overflow and was used as a pasture, without fences, when not overflowed, that was held sufficient possession to give title under the statute of limitations. *Webb* v. *Hynes*, 9 B. Monroe, 388.

GAMBLE, Judge, delivered the opinion of the court.

This was an action of ejectment to recover possession of a small piece of land near the town of Carondelet, brought by Gamache and others against Piquignot.

The plaintiffs claim that the title of their ancestor, John B. Gamache, was confirmed by the act of the 13th June, 1812. In support of this position, there were offered in evidence certain documents issued from the office of the recorder of land titles. The first was a paper claimed to be a certificate of confirmation, issued by Conway, the recorder of land titles, dated 22d January, 1839, under the act of congress of the 26th May, 1824. The second was an extract from the registry, kept by the recorder, of certificates issued by him, under the

act of 1824, by which it appears that Conway entered the certificate to Gamache's representatives, on that register, on the 12th March, 1839, and furnished on that day to the surveyor general a description of the land. The third was an extract from the additional list of claims furnished by the recorder to the surveyor general, on the 12th March, 1839, which addition was of the Gamache claim alone. There were other documents showing that Hunt, who was the recorder of land titles, who acted under the act of 1824, in taking proof of claims, and who filed with the surveyor the list of claims proved before him, had filed one or two supplemental or explanatory lists after the first.

The court below rejected the evidence offered. A survey of the claim of Gamache was made by a deputy surveyor, under instructions from the surveyor general, and the survey being returned to the office by the deputy, and a plat made, the word "approved" was written upon it and signed by the then surveyor general, but it never was recorded. It appeared in evidence, that the practice of the surveyor's office, when a deputy surveyor made return of a survey which he had been instructed to make, was to have the survey examined, to see the manner in which the deputy had followed the instructions given, and if he had followed them, his work was approved, and the approval evidenced by such writing as had been made in this case, which was intended to authorize the payment of the deputy for his work, and that subsequently the survey was more carefully examined, and if found to be a proper survey, in all respects, it was recorded in the books of the office, which was the evidence that it was finally adopted and approved; and that, by the practice of the office, certified copies of surveys were not given out until they were thus finally approved and recorded. Conway, who had been surveyor general, as well as recorder, testified, that he would regard the survey of the Gamache claim as an approved survey, and would record it as such, if he were in the office.

It appeared in evidence, that the present surveyor general re-

fuses to record it as an approved survey, or to certify it to the recorder as a survey of land for which a certificate of confirmation is to issue, and that in that refusal he is sustained by the department at Washington.

After the evidence was closed, the court, by an instruction, declared the survey was not evidence of title, nor of the boundaries and extent of the Gamache claim.

A certified copy of the affidavits made before recorder Hunt, when he was taking proof under the act of 1824, was in evidence, but an instruction given to the jury substantially excluded them from consideration.

The plaintiffs gave evidence of cultivation and possession of a tract of land of which the premises in controversy were alleged to form a part, claiming it to be an out-lot of the village of Carondelet, the title to which was confirmed by the first section of the act of June 13, 1812. The question of fact arising upon this part of the case was, whether the tract upon which the cultivation of Gamache was made embraced the premises in dispute.

The defendant claimed the premises under a lease from the corporation of Carondelet, as a part of the commons.

The court, at the instance of the plaintiffs, gave the following instructions :

1. If the jury believe from the evidence, that John B. Gaache, sr., was an inhabitant of the village of Carondelet prior to the 20th day of December, 1803 ; that he claimed and inhabited, cultivated or possessed, prior to that date, the tract of land described in the declaration in this case as an out-lot, or cultivated field lot, adjoining or belonging to said village, they will find for the plaintiffs for that portion of that tract which is embraced in lots Nos. 34 and 33, except sixty-six feet in width on the south side of said lot No. 33, of Mackay's subdivision survey No. 2.

2. The jury are instructed that inhabitation, cultivation or possession of a part of a lot, claiming the whole, is in law an inhabitation, cultivation or possession of the whole lot claimed,

within the true meaning and intent of the act of congress of 13th June, 1812.

3. The jury are instructed that the defendants have given no such evidence of adverse possession of the land in controversy in this case for twenty years prior to the commencement of this suit, as is sufficient in law to constitute an adverse possession that can bar this suit under the statute of limitations, provided the jury also believe that the tract of land in the declaration mentioned, was claimed and inhabited, cultivated or possessed, as an out-lot, or cultivated field lot of said village of Carondelet, by John B. Gamache, sr., prior to the 20th December, 1803.

The court refused to give the following instructions, which were asked by the plaintiff:

1. The jury are instructed that, as against such a claim and cultivation or possession as that mentioned in said second instruction, no adverse user as commons as a ground title under the act of congress of 13th June, 1812, can prevail, unless such user existed in fact by an actual occupation and use as commons of the same ground, visible and continued, notorious, hostile and exclusive, only to the extent that such actual occupation and use as commons existed in fact and to the exclusion of such claim and cultivation or possession by Gamache of the same land as an out-lot or cultivated field lot of the village, prior to the 20th day of December, 1803 ; provided the jury also believe from the evidence, that the tract of land in the declaration described was claimed and inhabited, cultivated or possessed by John B. Gamache, sr., prior to the 20th December, 1803, as an out-lot, or cultivated field lot of said village, with such a cultivation or possession as that mentioned in the said second instruction for the plaintiffs.

2. If the jury believe from the evidence, that the claim of the village of Carondelet to commons prior to the 20th day of December, 1803, was bounded north (in part) by the cultivated lots of the village, and that, prior to said date, the lot of land in said declaration described as having been claimed by

Gamache was one of the cultivated lots of the village, then there is no conflict of title in this case, and the defendants have shown no title to the land in controversy.

3. The jury are instructed that, on the evidence given in this case, the statute of limitations is no. bar to this action, unless they shall believe from the evidence, that the town of Caronde-let, or those holding under said town, have had an adverse possession in fact of the land in controversy in this case by an actual occupation on the ground, visible and continued, notorious, hostile and exclusive, for at least twenty years next preceding the commencement of this suit.

4. The jury are instructed that the survey No. 120 and the plats and field notes thereof, given in evidence by the plaintiffs, are evidence of the true location, extent and boundary of the out-lot of the village of Carondelet, claimed under John B. Gamache, sr., by his legal representatives.

5. The certified extract from the minutes of Recorder Hunt, taken under the act of congress of 26th May, 1824, are evidence that the tract of land therein mentioned and described was claimed and inhabited, cultivated or possessed by John B. Gamache, sr., prior to the 20th day of December, 1803, and evidence that the same was confirmed to John B. Gamache, sr., or his legal representatives, by the act of congress of 13th June, 1812.

6. The certified extract from registry of certificates from the recorder's office, offered in evidence, shows that the out-lot therein mentioned was confirmed to John B. Gamache, sr., or his legal representatives, by the act of 13th June, 1812.

7. The certified extract from the list of claims transmitted by the recorder of land titles to the surveyor general, and certified from the office of the surveyor general, relating to the claims of the legal representatives of John B. Gamache, sr., is evidence of said claim and the extent and boundary thereof; and that the same was confirmed by the act of congress of 13th June, 1812.

8. The certificate of confirmation of the recorder of land.

titles in Missouri, given in evidence by the plaintiffs, shows a *prima facie* title from the United States in the legal representatives of John B. Gamache, sr., to the land therein described.

The court, at the request of defendants, gave the three following instructions :

1. If the jury find that the land spoken of by the witnesses as actually cultivated and possessed by Gamache, did not embrace the land now in dispute, they ought to find for the defendant.

2. The survey No. 120, read by the plaintiff, is no evidence of title, nor of the extent and boundaries of Gamache's claim.

3. The testimony taken before Hunt, and read in evidence by the plaintiff, is not to be regarded by the jury in the present case, the defendant not insisting that the claim had been abandoned.

The jury gave a verdict for the defendant.

1. Part of the design of the act of 26th May, 1824, in requiring proof to be given before the recorder, by the individual claimants of land under the first section of the act of 1812, evidently was that within a short period, the government should be in possession of sufficient evidence, upon which to distinguish the private from the public property.   The proceedings before the recorder were to be the basis of the action of the surveyor, and the time allowed for taking the proof before the recorder was limited to eighteen months.   In the third section, it is required that, " so soon as the said term shall have expired he shall furnish the surveyor general with a list of the lots so proved to have been inhabited, cultivated or possessed, to serve as his guide in distinguishing them from the vacant lots to be set apart as above described, and shall transmit a copy of such list to the commissioner of the general land office."   The previous section of the act had provided that, " immediately after the expiration of the term allowed for proving such facts, it shall be the duty of the surveyor general" to designate and set apart the lots for the support of schools.

In the present case, we have a recorder of land titles, fourteen years from the passage of this act, attempting to give the evidence of title, by issuing a certificate of confirmation, and certifying the claim to the surveyor general, as one confirmed by the act of 1812. If the government of the United States has confirmed the title set up by the plaintiffs by that act of congress, then the party, as has been held in this court, does not lose his land by the failure to procure the evidence provided for by the act of 1824, and under these decisions, the plaintiffs in this case, after the evidence was rejected which they claimed was rightly issued under the last mentioned act, proceeded to prove the cultivation and possession of their ancestor, Gamache, and claimed that the title was confirmed by the act of 1812.

If the evidence of title, purporting to be issued under the act of 1824, appeared undisputed by the United States and acknowledged and treated by the government as effectual, then it may be that a person, who was a mere stranger to the title, would not be allowed to dispute the correctness of the conduct of the officers in their attempts to carry out the law.

But when we find that the government itself, in its own offices, arrests the progress of the title, and the whole reliance of the party in this case is upon the acts of the recorder, the correctness of which is denied by the government, we will examine his acts, and give them effect only so far as they conform to the law.

That the recorder, under the act of 1824, was required to act in a quasi judicial character, is perfectly manifest, although there was no mode provided by the law for the expression of an opinion against the sufficiency of the evidence given before him. If a claim was in his judgment confirmed by the act of 1812, he issued to the party a certificate of confirmation, and included the lot in the descriptive list, which he was required to furnish the surveyor general. If there was a failure to prove the inhabitation, cultivation, or possession, to his satisfaction, he simply omitted to include the claim in his list, and he issued no certificate.

The acts required to be done, when a claim was confirmed, were to be done immediately after the expiration of the time limited for taking the proof, and when we see, from the evidence offered by the plaintiffs, that the recorder filed his list of confirmations with the surveyor, in October, 1827, near twelve years before Conway, his successor, returned the present claim to that office, we cannot avoid the conclusion, that this latter act was not within the scope allowed for such proceeding by the act of congress.

It is not necessary to maintain that, if Hunt, the recorder, who took the proof, had died before he acted upon the claims, his successor could not act upon them; but when he did act, and made out and furnished to the surveyor the list required by law, the conclusion is one which the law draws, that claims not within that list are claims not proved to his satisfaction.

The fact that other claims were reported by Hunt and annexed to his list, which were never disputed, is only evidence that the government did not deal with these titles with any strictness; but when his successor takes up the book in which the affidavits of witnesses are contained, and undertakes to pronounce his judgment upon the testimony fourteen years after the affidavits were made, and twelve years after the list of Hunt was filed, his power to act upon the subject was properly denied by the other officers of the government, and before this court his act has the character of mere nullity.   Reference to several cases is made in support of the recorder's authority, but in none of the cases decided by this court has the present question been determined.   In *Macklot* v. *Dubreuil*, 9 Mo. Rep. 478, the certificate which was issued by the recorder in 1842, was objected to as evidence; but the objection made and decided upon by the court was, that the recorder had not jurisdiction of the case, because the land in dispute was not a lot which could be confirmed by the act of 1812.   In that case, the decision in *Hunter* v. *Hemphill*, 6 Mo. Rep. 106, is remarked upon, and it is said to be conceded in the latter case, that the defendant might show that the paper title of the plain-

tiff was a mere nullity, because issued by an officer not authorized by law. In the very papers produced by the plaintiffs and which were at first offered together, there are affidavits made before Hunt, the recorder, in 1825, and every other paper is made by Conway in 1839. The question whether Conway had any authority to act upon the subject at the time he did, was a question of law, arising upon the evidence offered by the plaintiffs, and required its exclusion if he had no legal authority to act. We think it clear that he had no such authority.

2. Reference is made to expressions used in decisions of this court, which are supposed to favor the idea that copies of the affidavits made before Hunt, are competent evidence to establish the facts testified to by the witnesses. No such inference is fairly deducible from the language employed. In *Biehler* v. *Coonce*, 9 Mo. Rep. 351, it is said that the tabular statements from the books of the recorder, are admissible in evidence ; but the court is then speaking of " an extract from the registry of confirmations by the recorder of land titles." In *Somers* v. *McGill*, 15 Mo. R. 87, it is said, that a properly authenticated extract from the descriptive list, sent by the recorder to the surveyor's office, is entitled to all the effect that an original certificate of confirmation would have. The sum of all the decisions is, that evidence from the recorder's books, and from the list sent to the surveyor's office, showing that he had acted upon the proof made before him, and had adjudged the claim to be confirmed, was admissible without the production of the certificate. In the present case, the extract from the registry of certificates, and the copy from the communication to the surveyor, both show that the action of recorder Conway, in 1839, was all the action ever had upon the claim, as exhibited before Hunt.

3. The survey of the Gamache claim was properly excluded by the instruction, after the whole evidence was given. It was perfectly apparent from the whole evidence relating to the survey, that it was not in that condition in the office, in which it could be regarded as completed, so as to be binding on the

government, or the party. It was but in progress and had not received the sanction which the regulations and practice of the office required.

4. The first instruction given for the defendant, if it stood alone, would be so entirely erroneous as to require a reversal of the judgment. That the jury should be required to find for the defendant, if the cultivation by the elder Gamache was not a cultivation of the precise piece of ground in controversy, would have been so gross a mistake, that neither the court nor the counsel asking the instruction could be supposed to have fallen into it. Accordingly, when we examine the second instruction given for the plaintiffs, we find the court telling the jury that cultivation of a part of a tract, under claim of the whole, was, under the act of 1812, a cultivation of the whole tract; and in looking into the case we see that the controversy was, whether this cultivation of Gamache, was not on an entirely different tract from that now claimed to include the premises in dispute. We are satisfied that the jury must have understood the question to be, whether the cultivation of Gamache, spoken of by the witnesses, was at any place upon the tract to which his heirs now claim title, or at some place upon an entirely different tract.

5. In this view of the question submitted to the jury, there would be no propriety in reversing the judgment for the instruction given for the defendant.

The instructions asked by plaintiffs, which were refused by the court, all refer to the proceedings in the recorder's office, the effect of which has been considered. The judgment is, with the concurrence of the other judges, affirmed.