THE CITY OF ST. LOUIS, Appellant, *vs.* TONEY, Respondent.

1. A confirmation by the act of June 13, 1812, was absolute, depending only on the fact of inhabitation, cultivation or possession prior to December 20, 1803, and was not forfeited by the failure of the claimant to prove up his claim under the act of May 26, 1824.
2. An official survey of a claim confirmed by the act of July 4, 1836, may be used as evidence of the locality and extent of the same claim confirmed by the act of June 13, 1812.
3. A confirmation of a lot by the act of June 13, 1812, enured to the benefit of the last claimant, where there had been several successive transfers, whether before or after the change of government.
4. A confirmation by the act of 1812 is not limited in extent to the spot actually inhabited, cultivated or possessed prior to December 20, 1803, but was for the lot *claimed*.
5. It seems that the affidavits before the board of commissioners, and recorder of land titles, although not evidence of the fact of inhabitation, cultivation or possession prior to December 20, 1803, might be competent evidence for some purposes. At all events, a case will not be reversed, because, after they were read in evidence without objection, they were not, at the close of the case, withdrawn from the jury by instruction.
6. As to what is an " out-lot" within the meaning of the act of 1812.

*Error to St. Louis Circuit Court.*

This was an action in the nature of ejectment for about forty-nine acres of land claimed by the plaintiff as a part of the St. Louis common, confirmed by the act of congress of June 13, 1812, and within Brown's official survey of said common. The defendant claimed title under a confirmation by the act of June 13, 1812, by virtue of the inhabitation, cultivation and possession prior to December 20, 1803, of Joseph Motard and those claiming under him, and also under a confirmation by the act of July 4, 1836.

At the trial, the plaintiff exhibited the following evidence of title :

1. Acts of congress of June 13, 1812, May 26, 1824, and January 27, 1831.

2. Proceedings before the old board of commissioners, and before the recorder of land titles under the act of May 26, 1824, upon the claim of the inhabitants of St. Louis to common.

3. United States survey No. 3125 of the St. Louis common.

4. Confirmation certificate No. 72, issued by the recorder of land titles, and dated May 7, 1851.

5. Act of the legislature of the territory of Louisiana, approved June 18, 1808, authorizing the St. Louis Court of Common Pleas to incorporate the town.

6. Record of the incorporation of the town of St. Louis by the St. Louis Court of Common Pleas.

7. Acts of the legislature of the territory of Louisiana, approved January 15, 1813, and January 21, 1815.

8. Acts of the general assembly of Missouri, approved December 19, 1822, January 15, 1831, February 26, 1835, March 18, 1835, January 18, 1837, February 8, 1839, February 15, 1841, and February 8, 1843.

9. It was admitted that the land in dispute was within survey 3125, and that the defendant was in possession at the commencement of this suit.

The defendant then offered the following evidence :

1. A deed from Joseph Motard to Patrick Lee, dated November 7, 1800, conveying, among other property, "upwards of seven arpens of land in front by upwards of forty in depth, situate in the prairie called Cul de Sac, against the river of the mill of Don Auguste Chouteau." The granting words of the deed are, "sold, ceded, transferred and abandoned." It was executed before Don Carlos Dehault Delassus, lieutenant governor of Upper Louisiana.

2. A deed from Patrick Lee to Calvin Adams, dated August 22, 1803, conveying the same property by the same granting words, and executed in the same manner, as the deed last referred to.

3. Petition from Calvin Adams to Delassus, dated January 20, 1804, praying for an order of survey of the land purchased of Lee, with an order "signed by Delassus endorsed upon it. Also a plat and survey by James Mackay, dated November 16, 1805, "of 1340 arpens of land, French measure, situated on Mill creek, at a place called Motard's plantation, and surveyed at the request of Calvin Adams as his claim to a settlement right by virtue of the act of Congress of March 2, 1805, as also by virtue of a purchase from said Motard for a part of said claim or tract." This survey was recorded by Antoine Soulard, signing himself "Surveyor General Ty. Louisiana," on the 16th of January, 1806.

An objection to the admission of these documents in evidence, on the ground that they were dated after the change of government, was overruled, and an exception taken.

4. Proceedings before the old board of commissioners upon the claim of Calvin Adams, as assignee of Patrick Lee, to 1340 arpens of land. The claim was rejected. Also, proceedings before the board of commissioners under the act of July 9, 1832, and the supplementary act of March 2, 1833, which resulted in the confirmation to Joseph Motard, or his legal representatives, of 280 arpens of land, by the act of July 4, 1836. These proceedings contained the affidavits of wit-

nesses examined before the commissioners to the fact of cultivation and possession by Motard prior to the change of government, and that the land so cultivated was outside of the fence of the St. Louis common, as it then ran, and were read in evidence without objection at the time.

5. United States survey No. 3182 of the 280 arpens confirmed to Motard or his representatives by the act of July 4, 1836.

This survey was objected to by the plaintiff, on the ground that, being a survey of a confirmation by the act of 1836, it was incompetent evidence against the plaintiff's title.

6. A deed from Calvin Adams to David Musick, dated January 22, 1808, for 1340 arpens, described as claimed by Adams, in part, as a settlement right, and in part by purchase from Patrick Lee. The defendant showed a derivative title under David Musick.

7. Oral evidence that prior to December, 1803, Joseph Motard, who himself resided in the village of St. Louis, had servants upon and cultivated a part of the tract of 7 by 40 arpens, which includes the land in dispute, and that it was afterwards cultivated by Calvin Adams and those claiming under him, from 1807 down to the commencement of this suit; and also evidence tending to show that said tract was a part of the Cul de Sac common fields, and was outside of the old inclosure of the St. Louis common.

The plaintiff, in rebuttal, gave evidence tending to show that said tract of 7 by 40 arpens was not a part of the Cul de Sac common fields, and that a part of it was inside of the old inclosure of the St. Louis common.

The following instructions asked by the defendant were given, to which the plaintiff excepted:

1. If the jury find from the evidence that the tract of 7 by 40 arpens surveyed to Motard is located adjoining or near the former town of St. Louis, or the common fields in, adjoining or belonging to the same, and that the same, or some part thereof, was, prior to 20th day of December, 1803, inhabited, cul-

tivated or possessed by the said Joseph Motard, and those claiming under him, and that the defendant is in possession of a part of said tract or lot of 7 by 40 arpens, deriving title from said Joseph Motard, and that Joseph Motard, prior to the time last mentioned, had his residence in the said town of St. Louis, and by himself, his servants or agents, occupied, possessed and cultivated the said tract, or some portion thereof, as a farm or lot in the vicinity of said town, then the jury are instructed that the lot of 7 by 40 arpens is an out-lot, within the true intent and meaning of the act of the 13th of June, 1812, and the defendant is, upon that state of facts, entitled to a verdict.

2. A common field lot, within the meaning of the act of (as described by our Supreme Court) June 13th, 1812, is a lot in the neighborhood of one of the villages or towns enumerated in said act, used by an inhabitant of said town or village for purposes of cultivation. Said common field lots being in the form of parallelograms, and usually forty arpens in depth and one or more arpens in width, lying adjacent to each other in the same general range of lots. It is not essential, to constitute a common field lot, that there should have been any written grant or official survey thereof.

3. If, therefore, the jury find from the evidence, that Joseph Motard, prior to the 20th of December, 1803, was an inhabitant of the town of St. Louis, and before that day inhabited, cultivated and possessed an out-lot or common field lot, claiming the same as owner, and that said Motard or any person or persons who had acquired his right, title and claim to said lot, continued to claim said lot down to the 13th of June, 1812, and that the land in dispute is included within the boundaries of said lot, the plaintiff is not entitled to recover in this case.

The following instructions asked by the plaintiff were refused:

1. The act of 1824 required all private claimants of town or village lots, out-lots or common field lots, under the act of 13th

June, 1812, to appear before the recorder of land titles within eighteen months of the 26th May, 1824, and prove the facts of inhabitation, cultivation and possession, and the extent and boundaries of their claims. Those who did not comply with this provision are barred of all benefit of the act of 13th June, 1812.

2. The act of May 26, 1824, required all private claimants of town or village lots, out-lots, or common field lots, under the act of the 13th of June, 1812, on the ground of cultivation, inhabitation or possession, prior to the 20th December, 1803, to proceed within eighteen months after the 26th May, 1824, to designate their said lots, by proving before the recorder of land titles the fact of inhabitation, cultivation or possession, and the boundaries and extent of their claims. Those who did not comply with this provision are barred of all benefit of the act of 13th June, 1812, and a survey made by the surveyor general, under the act of May 26, 1824, of the St. Louis common, cannot be impeached by a private claimant, who failed to make proof, as aforesaid, before the recorder of land titles, within eighteen months after the passage of the act of 26th May, 1824, as prescribed by that act.

3. If any person claimed a lot of ground by virtue of inhabitation, cultivation or possession, under the act of 13th June, 1812, then the act of 26th May, 1824, required that the fact of such inhabitation, cultivation or possession, and the boundaries and extent of such claim, should be proved before the recorder of land titles during the years 1824 and 1825, to enable the surveyor general to distinguish the private from the vacant lots, &c.; and no such steps having been taken by Motard or his representatives, or any other person, under the act of 1824, nor any authoritative location or survey of the land made at any time, as confirmed by the act of 1812, the evidence given in this case will not enable the defendant to resist a recovery by the plaintiff.

4. The jury is instructed that, there having been no concession, nor grant, nor survey, nor permission to cultivate or

possess the land claimed by the representatives of Joseph Motard, issued to said Motard, or Patrick Lee, or Calvin Adams, under the French or Spanish government or authorities, and no location of said claim under the French or Spanish government, and no proof having been made at any time by Joseph Motard, or those claiming under him, nor by any other person, of any inhabitation, cultivation or possession, or of the location or extent of said claim, either under the provisions of the act of 13th June, 1812, or any act supplementary thereto, before the United States recorder of land titles, or other United States authority, and there having been no survey or location of said land by or under the provisions of said acts, by any rightful authority, the defendant cannot now avail himself of any merely parol evidence to locate said claim, and prove inhabitation, cultivation or possession thereof, so as to entitle himself to a confirmation by virtue of the act of June 13, 1812.

5. The survey made by the United States, number 3125, taken in connection with the acts of 13th June, 1812 and May 26, 1824, is equivalent to a patent from the United States to the inhabitants of St. Louis, granting them the land described and embraced in said survey.

6. Survey No. 3125, being the survey of the St. Louis common by the authority of the United States, is conclusive evidence in this case, of the true location, extent and boundaries of the St. Louis common.

7. The survey No. 3182, given in evidence by the defendant, is no evidence of the location, extent or boundaries of any tract of land confirmed by the act of 13th June, 1812, or any act supplementary thereto, but only of the location, extent and boundaries of a tract of land confirmed by the act of the 4th July, 1836.

8. The defendant cannot resist a recovery in this action by virtue of any title derived under the act of July 4, 1836. The survey of the common, made between November 2, 1832, and 13th May, 1833, and given in evidence by the plaintiff, is

conclusive against all title to the premises in controversy under the act of July 4, 1836.

9. The jury is instructed, that, if they believe from the evidence that Joseph Motard executed and delivered the deed given in evidence by the defendant, dated 7th November, 1800, then there was no confirmation to said Motard by the act of 13th June, 1812, as to the land described in said deed.

10. The jury is further instructed that, if they believe that Patrick Lee executed and delivered to Calvin Adams the deed given in evidence by the defendant, dated 22d August, 1803, then there was no confirmation to Patrick Lee by the act of 13th June, 1812, of the land described in said deed.

11. The jury is further instructed that, unless they believe from the evidence that Calvin Adams, in the interval between 22d August, 1803, and 20th December, 1803, inhabited, cultivated or possessed the land described in said last mentioned deed, then there was no confirmation to him of the land described therein, by the act of 13th June, 1812.

12. The jury is further instructed that, if Calvin Adams, on the 22d January, 1808, in good faith, executed and delivered to David Musick the deed to him of that date, read in evidence by defendant, there could be no confirmation to said Adams, under the act of 13th June, 1812, of the premises therein described.

13. The statute of limitations did not begin to run against the plaintiff in this cause prior to the 13th day of May, 1833, the date of the survey of the common of St. Louis.

14. The statute of limitations did not begin to run against the plaintiff in this cause prior to the 27th January, 1831.

15. The term out-lot was not known to the laws applicable to the land in the territory of Missouri, until after the act of congress of the 13th June, 1812, and no lot or parcel of land can be an out-lot, within the meaning of the law, in regard to which no proof has been offered before any recorder of land titles, or other United States authority, since the said 13th June.

16. There is no evidence in this cause tending to show that the farm of Motard was an out-lot.

17. The act of congress of 13th June, 1812, confirmed only so much land as was inhabited, cultivated or possessed by the claimant prior to the 20th December, 1803, where such claim was not definitely located and bounded.

17. The affidavits of the witnesses, as contained in the copies of the proceedings of the board of commissioners, and of the recorder of land titles, read in this cause, are not evidence in the case of the facts therein stated.

19. The title to the land described and embraced in survey 3125, given (as supposed in instruction No. 5) to the inhabitants of St. Louis, was vested in the city of St. Louis, by the several acts of the legislature of Missouri, read in evidence.

The court, of its own motion, gave to the jury the two following instructions:

1. By the several acts of congress and of the state of Missouri, read in evidence, in connection with survey No. 3125, plaintiff has succeeded to all the rights of the inhabitants of said St. Louis, in and for the land embraced and described in the said survey.

2. The jury are instructed that no defence arising under the statute of limitations has been established, and the same will therefore be disregarded by them.

There was a verdict for the defendant, and the plaintiff brought the case here by writ of error. The cause was argued at the October term, 1854, by Mr. *Polk*, for plaintiff in error, and by Mr. *Geyer*, and Mr. *Shepley*, for defendant in error.

SCOTT, Judge, delivered the opinion of the court.

The principal question involved in this controversy has, during its pendency, been determined by the Supreme Court of the United States, in the case of *Guitard et al.*, v. *Stoddard*, (16 Howard, 494.) That case settled that a confirmation by the act of the 13th June, 1812, was absolute, depending only on the fact of inhabitation, cultivation or possession prior to

the 20th December, 1803 ; and that it was not necessary for the confirmee to have received from the Spanish government a grant or survey, or permission to occupy or cultivate the land claimed ; that the act of 26th May, 1824, requiring claimants to designate their lots by proving the facts therein specified, imposed no forfeiture for a failure to comply with its terms, nor were the claims, as confirmed by the said act of 1812, in any way impaired by such omission ; but claimants might still establish their titles by parol evidence of those facts, for which they were confirmed by the said act.

The main question in the cause having been determined by that tribunal, whose judgments in matters involving the construction of the laws of the United States are conclusive, we will proceed to examine some other points presented to our consideration, necessary to a final determination of this controversy.

The case above referred to disposes of the 1st, 2d, 3d, 4th and 15th instructions asked by the plaintiff and refused, and the others will be reviewed in their numerical order.

There was no error in refusing the fifth instruction, because it contains no reference to the act of 27th January, 1831, along with the other acts mentioned, without the aid of which it is conceived that the city cannot maintain a suit for the common. ( *Les Bois* v. *Bramell*, 4 Howard, 469.)

Instruction numbered six was properly refused, as it maintained that a confirmation and survey under the act of 1812, was a better title than a confirmation under the same act, with proof of inhabitation, cultivation or possession, which is contrary to the doctrine asserted in the case of *Guitard* v. *Stoddard*, above referred to.

The seventh instruction, in relation to survey No. 3182, which was a survey of the Motard claim, as confirmed by the act of July 4, 1836, was too general in its language, as the effect of it was to deprive that survey of all validity whatever, taken disconnected with the act of July 4th, 1836. Whereas, it is conceived that that survey is evidence of the locality of the

City of St. Louis *v.* Toney.

claim of Motard, under whatever law it is regarded. The claim under which the defendant held was recognized by the Spanish lieutenant governor, in witnessing its several transfers. That claim, it is alleged, was confirmed by the act of 1812. The same claim was afterwards presented to a board of commissioners, and was by them confirmed. It was then surveyed under the authority of the laws of the United States, by virtue of this last confirmation. Now it is conceded that a confirmation under the act of 1836, and a survey thereupon, is an inferior title to a confirmation and survey under the act of 1812. But what principle is violated by the use of the survey under the act of 1836, as mere evidence of the locality of a claim under the act of 1812? It is an authoritative act of a public officer. As such, it was referred to by the plaintiff in her petition to designate a boundary of the land sued for. Of itself, it conferred no title. It was not given in evidence with any declaration that it had any such effect, but simply *quantum valeat valere potest.* If two claims are for the same tract of land, why should not the location of it under one of them be used indiscriminately for showing the land claimed?

Complaint is made for the refusal of the eighth instruction, as it contained a correct legal proposition and was relevant. The case as made by the instructions given for the defendant did not turn on any title derived under the act of July 4, 1836, but rested for its validity on the act of 1812, and the proof of the facts thereby required. The refusal, therefore, of the court to grant it would not be apt to affect injuriously the rights of the plaintiff. But this is no answer to the objection. The first proposition contained in that instruction was undoubtedly the law as established by the decisions of the Supreme Court of the United States in the cases of *Mackay* v. *Dillon*, and *Les Bois* v. *Bramell*, (4 Howard, 421 and 449.) These cases fully maintain that a confirmation and survey of the commons, under the acts of 1812 and 1824, is a superior title to any derived by confirmation and survey under the act of July 4, 1836. The last clause of the instruction under exam-

17—XXI.

ination would make the survey alone, disconnected with the acts of 1812 and 1824, conclusive. When a party seeks to reverse a judgment for the refusal of an instruction, the refusal of which, it is claimed, might possibly have injured him, and when the judgment might well stand consistently with the hypothesis assumed in the instruction refused, and by the instructions given was made to stand on a different hypothesis altogether, that instruction must be *omni exceptione majore*.

The ninth, tenth, eleventh and twelfth instructions required the court to declare, as law, that the claimant, under the act of 1812, must be the same person who cultivated the lot prior to the 20th December, 1803 ; that the act of 1812 is only available to those who continued to retain their claims arising under the Spanish government, until the date of its passage. It is clear that, if a claim was abandoned, it had no existence at the date of the act, and could not, therefore, be confirmed. But it is conceived that a claim, whether it was transferred before or after the change of government, was not affected by any disposition made of it. If the inchoate right, commencing under the Spanish government, continued in existence until the act of 1812, it was confirmed without regard to the number of alienations to which it had been subjected, and enured to him who was entitled to it, whether he claimed by purchase or descent. The confirmation was to the original claimant or his legal representatives, without regard to the date of the alienation. This, it is believed, has been the uniform interpretation of the act. The construction contended for by the plaintiff would leave most of the claims in existence at the date of the act unconfirmed.

The thirteenth and fourteenth instructions relate to the statute of limitations, about which there is no controversy.

The subject of the sixteenth instruction will be considered in connection with the instructions given for the defendant.

The seventeenth instruction is in these words : " The act of congress of the 13th June, 1812, confirmed only so much land as was inhabited, cultivated or possessed by the claimant prior

City of St. Louis *v*. Toney.

to the 20th December, 1803, where such claim was not definitely located and bounded." The claims contemplated by the act of 1812 must have had existence under the Spanish government. The claim of Motard was recognized by the Spanish authorities. It was seven by forty arpens, lying in the Cul de Sac fields, against Little river. There seems as much definiteness here as in many claims confirmed by the act of 1812, and it has never been thought that the rights of claimants, in such cases, were limited to the spot actually inhabited or cultivated. Such a view is contradicted by the prevailing opinion in relation to this subject. It is not the possession that is confirmed by the act, but the right and claim to a lot inhabited, cultivated or possessed prior to the 20th December, 1803. Possession is the evidence of the existence of a claim, but not of the entire extent of it—at least not the only evidence. The extent of a claim resting on no grant nor concession, but on matters *in pais*, would be a very proper subject for the consideration of a jury. No documentary evidence or authoritative location or ascertainment of boundaries was a pre-requisite to a confirmation under the act of 1812. ( *Guitard* v. *Stoddard*, 16 Howard.) There was evidence in the record of the extent of the claim of Motard.

The eighteenth instruction relates to the affidavits of witnesses, as contained in the copies of the proceedings of the board of commissioners, and of the recorder of land titles, read in evidence, and asks that the jury be directed that they are not evidence in this case of the facts therein stated. The plaintiff read a portion of these depositions, on her part, without objection. That must have been done with some view. They must have been regarded as evidence for some purpose. It is clear that they were not evidence for the purpose of establishing the fact of inhabitation, cultivation or possession, as required by the act of 1812, on the part of the defendant, and should not have been listened to by the jury for any such purpose. But the instruction is not thus limited in its operation. In its scope, it would deprive the affidavits of all efficacy for any pur-

pose whatever. If the affidavits are not evidence of the facts in them stated, then they would be no evidence at all; no use could be made of them as evidence. The directions as to the effect of evidence should be given at the time it is delivered. The course adopted by the plaintiff might lead to surprise. If evidence is permitted to be introduced without objection, and the party producing it lets it remain with the jury until the case is closed, and then, by instruction, seeks to avoid the effect of it, his adversary might be deprived of testimony which might otherwise have been supplied. We are not prepared to say that the affidavits are evidence for no purpose. They have been used to give locality to a claim without objection, and we see no reason why they might not have been so used in the case before us.

The instructions given at the instance of the defendant, defining an out-lot within the meaning of the act of 1812, are complained of as not being in conformity to law. It is maintained that an out-lot, within the terms of the act, must be both adjoining and belonging to the town or village of which it is an appurtenant; or, if not so, it must at least be shown to be adjoining the town, or a civil dependency appurtenant to it. It has been said that the question as to what is an out-lot, is a mixed question of law and fact. But it appears to me, that subject to the control in granting a new trial, it is mainly a question for a jury. No court, by a prospective definition, can embrace all the lots which would come under the class of "out-lots." Each lot must depend on the evidence in relation to it, in order to its classification. It is obvious that it is not necessary that a lot should touch the town to make it an out-lot. If it is adjacent to the common fields, it is near the town, as the common fields must, in the words of the act, be adjoining and belonging to the town. That the lot was cultivated by an inhabitant of the town, is some evidence of its dependence, or of its belonging to it. The fact that the claimant must be an inhabitant of the town, in order to be entitled to a confirmation, does not deprive this circumstance of its weight, in showing that

the lot was a dependency, taken in connection with its contiguity to the town. The plaintiff claims the land in controversy as a part of a civil dependency of the ancient village. On its being such, her right to maintain her action depends. It must be adjoining and belonging, in order to be commons. If it is sufficiently adjoining and belonging to be commons, why not so to be an out-lot; for it is only necessary that a lot should be adjoining and belonging to the town, to be an out-lot in the words of the law. In our opinion, there was nothing in the instructions given on the subject of what constituted an out-lot, to induce us to disturb the judgment, considering the subject of the action instituted by the plaintiff.

Judge Ryland concurring, the judgment will be affirmed. Judge Leonard was not upon the bench when the case was heard.