JAMES W. BAIRD *et al.*, Respondents, *v.* ST. LOUIS HOSPITAL ASSOCIATION, Appellant.

### March 20, 1877.

1. Possession under a certificate of confirmation which requires a survey, in order to attach to any specific tract or lot, will not support the defense of limitation, unless such survey be made more than ten years prior to the commencement of the suit.

2. The *proviso* in the 1st section of the act of Congress approved June 13, 1812, is not to be construed as depriving a previous confirmee of any benefit of the act itself. Its whole purpose is to prevent any interference, by the provisions of the act, with rights acquired under a previous confirmation.

3. The testimony taken before the commissioners for ascertaining and adjusting the titles and claims to lands in the Territory of Louisiana, is admissible to show the location and boundaries of the land by them confirmed.

4. A certificate of confirmation granted by the Board of Commissioners is competent testimony to prove the facts — if therein recited — of inhabitation and cultivation on and before December 20, 1803, under the acts of Congress of 1805, 1807, and 1812.

5. Where the testimony tended to show facts which would constitute a confirmation by the act of June 13, 1812, it was erroneous to refuse instructions founded on the hypothetical sufficiency of such a confirmation to sustain the defense of limitation.

6. *Quœre*, whether a survey, having been approved by the surveyor general, can be afterwards annulled by that officer.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*E. T. Farish*, for appellant, cited : Ryan *v.* Carter, 3 Otto, 78 ; 30 Mo. 166 ; 50 Mo. 79, 80 ; 16 How. 494 ; 18 How. 19 ; 32 Mo. 13 ; 18 How. 412 ; 8 Wall. 660 ; 47 Mo. 282, 284 ; 50 Mo. 544, 550 ; 2 Washb. 507 ; Bernard *v.* Edward, 4 N. H. 321 ; Spencer *v.* Western, 1 Dev. & B. 213 ; Wallace *v.* Maxwell, 7 Ind. 135 ; Gallway *v.* Ogle, 2 Burn. 468 ; Van Dyke *v.* Van Buren, 1 Caines, 13.

*D. T. Jewett*, for respondents, cited : Maguire *v.* Tyler, 8 Wall. 665 ; West *v.* Cochran, 17 How. 416 ; Gibson *v.* Chouteau, 13 Wall. 99–104 ; Langdeau *v.* Haines, 21 Wall. 521 ; McElhenney *v.* Ficke, 61 Mo. 239 ; Miller *v.* Dunn, 62 Mo. 216 ; Vasquez *v.* Ewing, 42 Mo. 255, 264 ; 40 Mo. 408.

LEWIS, P. J., delivered the opinion of the court.

Plaintiffs sue in ejectment for the greater part of the south half of block 80 in the city of St. Louis. They show a chain of title from John Coons, to whom a certificate of confirmation was issued June 10, 1811, by the board of " commissioners for ascertaining and adjusting the title and claims to lands in the Territory of Louisiana." This confirmation was made to John Coons, claiming under Samuel Solomon, by virtue of the 2d section of the act of Congress approved March 2, 1805, for " one hundred and twenty feet by three hundred feet of land, situate in the district of St. Louis, town of St. Louis," to be " surveyed conformably to the possession of Samuel Solomon." The certificate re-

cites, further, that the grounds of the claim consisted of " a possession from the proper Spanish officer, and also of actual inhabitation and cultivation prior to and on the twentieth day of December, 1803." The defendant sets up the statute of limitations. It is admitted that the defendant and those under whom it claims have had a continuous adverse possession for more than thirty years before the commencement of this suit. Plaintiffs claim, however, that the fee did not pass from the United States until the passage of the act of Congress in relation to land titles in the State of Missouri, approved June 6, 1874, and therefore the statute never began to run in defendant's favor. No patent was ever issued.

If it can be shown that the title stands upon the certificate of confirmation only, and that even this, as plaintiffs allege, never attached to any specific tract or lot until an authoritative survey was made in 1874, there may then be little difficulty in sustaining the plaintiffs' claim, under the rulings of the United States Supreme Court in *Stanford* v. *Taylor*, 18 How. 409 ; *Gibson* v. *Chouteau*, 13 Wall. 92, and other cases. But if, with the help of an authoritative survey, made more than ten years before the institution of this suit — or without it — we find the title confirmed by operation of the act of June 13, 1812, then, according to our highest judicial authorities, the defense of limitation must prevail.

The 1st section of the act of 1812, after confirming to the inhabitants of the towns and villages named the lots, etc., which were inhabited, cultivated, or possessed prior to December 20, 1803, announces a proviso that " nothing herein contained shall be construed to affect the rights of any person claiming the same lands, or any part thereof, whose claims have been confirmed by the board of commissioners for adjusting and settling claims to lands in the said Territory." It is argued for plaintiffs that the effect of this proviso is to exclude all lots or lands so previously con-

firmed from any operation of the act. But such is not the true interpretation. It is not the lots or lands, but the *rights* of any person, which are to remain unaffected by the act. To affect a right is, in common acceptation, to impair in some way, if not to destroy it. The proviso means nothing more than that the act is not to affect injuriously any right of the confirmees described. It may, however, confer upon them a new right, or evidence of title, in addition to that derived from the former confirmation. Such was the effect given to the proviso by the United States Supreme Court in *Ryan* v. *Carter*, not yet reported. The land, in that case, was confirmed to Dodier in 1810, by the board of commissioners. Yet full effect was given to the act of 1812, as a present grant of title to Dodier, from which the statute of limitations began to run.

Plaintiffs undertake to break the force of that decision by assuming that the act of 1812 would not have been held operative but for the " definite boundaries and location " of the lot, which are alleged to be wanting in the present case. But the existence of well-defined boundaries was a mere incident in that case, having nothing to do with the reasoning whereby the court reached its conclusions on this point. Boundaries and location, so far as they might be essential to bring the claim within the act, were equally so with or without reference to a previous confirmation. The point made was that, if any given tract or lot be found to be within the effective operation of the act of 1812, the fact of a prior confirmation by the commissioners will not render it any less so.

The question must, therefore, be considered in total disregard of the proviso : Was the land in controversy included in the confirmation, or grants, created by the act of 1812?

The Circuit Court refused to give, upon defendant's application, a series of instructions declaring the legal effect of a hypothetical confirmation by the act of 1812,

upon the defense of limitation. The only supposable basis of this refusal was the interpretation of the proviso, which we have here found it impossible to sustain. There was testimony tending, at least, to prove every element of fact necessary to such a confirmation. It has uniformly been held that, for that purpose, it is sufficient to satisfy the jury of actual inhabitation, cultivation, or possession of a defined lot or tract within the specified classes, at the time designated in the act. *West* v. *Cochran*, 17 How. 416. The evidence taken before the board of commissioners was introduced by the plaintiffs. This entitled the defendant to its full benefit. *Clark* v. *Hammerle*, 27 Mo. 71. Even if it could not be considered with reference to the question of inhabitation and cultivation, it was competent for the purpose of proving locality and boundaries of the lot confirmed. *City of St. Louis* v. *Toney*, 21 Mo. 255. These it tended pretty strongly to establish. The certificate of confirmation itself was *prima-facie* evidence of all facts recited therein, which the commissioners were by law authorized to certify as having been ascertained by their investigations. *Gurno* v. *Janis*, 6 Mo. 330. It describes the land as " one hundred and twenty feet by three hundred feet of land, situate in the district of St. Louis, town of St. Louis," etc. In *Langdeau* v. *Hanes*, 21 Wall. 531, a confirmation by the commissioners under the act of Congress approved March 26, 1804, made upon a grant of " two hundred and four acres " — it being clear that a specific tract was meant, and not merely a quantity — was considered sufficiently definite in description to pass the title from the United States, by virtue of the general confirmatory act of March 3, 1807, without a segregation by survey. By analogy, the description in the certificate before us would seem sufficiently definite to exclude it from that class of " floating claims " which are held to derive no benefit from the act of 1812.

There was no lack of testimony tending to prove inhabitation, cultivation, or possession by the original claimant,

on and before December 20, 1803. The certificate distinctly asserts those facts. Our Supreme Court has repeatedly decided that the certificate of the recorder, who succeeded to the functions of the board of commissioners, was *prima-facie* evidence of inhabitation, cultivation, and possession, where those facts were recited therein as the basis of its issuance. *Janis* v. *Gurno*, 4 Mo. 458 ; *Gurno* v. *Janis*, 6 Mo. 330 ; *Soulard* v. *Allen*, 18 Mo. 596. We can perceive no reason why the rule should not apply as well to the certificate of the commissioners ; especially in this case, where the latter was part of the plaintiffs' testimony. True, it was issued before the passage of the act of 1812. But all these acts are to be considered *in pari materia*, and the specific facts to be established were, moreover, the same, in this particular, under the several acts of 1805, 1807, and 1812. The commissioners, as well as the recorder, were legally empowered to inquire of and decide upon them. There was, also, on the trial, oral testimony tending to prove occupancy by the first confirmee, on and before December 20, 1803, of part of the lot in controversy. This was sufficient to entitle the defendant to the instructions denied. It might have been proper for the court, either with or without the plaintiffs' solicitation, to explain or qualify them, with reference to the extent of possession proved. But to refuse them was erroneous.

Upon the other branch of inquiry—so far, at least, as a survey might promote a divestiture of the government's title—the plaintiffs appear to have made no better case. It was confidently asserted, in argument, that no approved survey of the claim in controversy was made, prior to that of May 2, 1874. But the record fails to sustain this assertion. The defendant introduced a copy of United States Survey No. 305, which was duly approved by the surveyor general on December 11, 1861. This survey was made expressly to locate the confirmation under which the plaintiffs claim. A marginal note added by the surveyor general,

five months after the date of his approval, points out an
apparent error of extent or quantity, but does not under-
take to annul the survey.  It seems doubtful, indeed, that
the officer could do so effectually, after having once ap-
proved it.  *Gibson* v. *Chouteau*, 39 Mo. 562.  The de-
fendant introduced, also, a copy of United States Survey
No. 306, approved by the surveyor general on December,
11, 1861.  This purports to have been made under a con-
firmation by Recorder Hunt, in favor of Samuel D. Solo-
mon's legal representatives, under the act of May 26, 1824,
supplemental to the act of June 13, 1812.  A note appended
recites that it covers part of the area included in survey
No. 305, made under commissioners' certificate No. 938, in
favor of John Coons, under Samuel Solomon.  The re-
corder's certificate does not appear in the testimony.  There
can be little doubt, however, that this confirmation was
merely supplemental to the evidences already existing of a
complete transfer from the government, to Solomon's rep-
resentatives, of the legal title to the lot in controversy.

It thus appears that the testimony tended to show two
surveys locating the confirmation of 1810 ; both of them
being authoritatively approved more than ten years before the
commencement of this suit.  Whether, in addition to these
surveys, the issuance of a patent was also necessary for a
defense under the statute of limitations, we are not now
called upon to decide.  The Circuit Court erred in refusing
to recognize the possibility of such a defense, as resulting,
in part, from a supposed confirmation under the act of June
13, 1812.  The judgment is reversed and the cause re-
manded.  Judge HAYDEN concurs ; Judge BAKEWELL, having
been of counsel, not sitting.