SOULARD et al., Appellants, vs. CLARK, Respondent.

1. Where a record is proper evidence of a fact, it will be admitted, and the opposite party is left to his motion, to exclude irrelevant matter in the record from the consideration of the jury.

2. In order that a claim should have been confirmed by the act of July 4, 1836, it was not necessary that the board of commissioners should in terms recommend it for confirmation. The statement of the opinion of the board that it was already confirmed by the act of 1812, is sufficient.

3. Where there was a partition of a joint concession, a confirmation by the act of 1812 would enure to the benefit of each claimant for the portion set apart to him.

4. The act of June 13, 1812, operates as a complete grant. The claimant did not forfeit his rights by a failure to prove up his claim under the act of May 26, 1824, but may establish it in the courts by oral proof of inhabitation, cultivation or possession prior to December 20, 1803.

*Appeal from St. Louis Court of Common Pleas.*

This was an action of ejectment, brought in 1848, to recover a parcel of land of one arpent in front on Carondelet avenue, in the southern part of the city of St. Louis, by two arpens in depth, in the possession of the defendant. The plaintiffs are the legal representatives of Antoine Soulard, and exhibited the following evidences of title :

Soulard *v.* Clark.

1. A concession to Antoine Soulard, from Zenon Trudeau, dated August 7, 1798, for 14 by 15 arpens.

2. A survey made by Soulard in January, 1800, of the land conceded, the quantity embraced by which survey was 204 arpens and 48 perches.

3. A notice from Soulard to the recorder of land titles of his claim to 56 arpens and 9 perches under the concession, " abandoning the overplus." This notice was dated December 16, 1813.

4. A report of the recorder of land titles, in tabular form, of his opinion upon claims presented for confirmation. The claim of Soulard to 56 arpens and 9 perches is embraced in this report, and reported by the recorder for confirmation. The report does not show any proof of inhabitation, cultivation or possession, but the concession, survey and notice are referred to. This report was confirmed by the act of April 29, 1816.

5. A survey of the whole tract of 204 arpens and 48 perches by Joseph C. Brown, deputy surveyor, in 1818. This survey does not designate the land confirmed by the act of 1816.

6. A confirmation by the act of July 4, 1836, of the whole tract of 204 arpens and 48 perches.

7. An official survey, in 1838, numbered 3124, of the whole tract, as confirmed by the act of 1836.

The surveys of 1800, 1818 and 1838 include the land in controversy.

The defendant exhibited the following evidences of title :

1. A concession from St. Ange to Madame Chouteau, of four by forty arpens, in the Little prairie, dated August 8, 1767.

2. A confirmation to Madame Chouteau's representatives by the act of April 29, 1816, upon the report of the recorder of land titles, upon possession and cultivation prior to December 20, 1803.

3. An official survey, numbered 1827, of the confirmation to Madame Chouteau.

4. A concession from St. Ange to Gervais, dated August 8, 1767, of two by forty arpens, in the Little prairie, adjoining Madame Chouteau, on one side, and Cambas & Ortiz on the other.

5. A concession of the same date to Cambas & Ortiz of two by forty arpens, bounded south by Gervais, " on condition to establish the said land in one year and a day, and to be subject to public charges."

6. A general notice to the recorder of land titles by the claimants of lots, including those in the Little prairie, dated November 28, 1812.

7. The deposition of Madame Ortiz, the widow of John B. Ortiz. She testified that her husband and Cambas picked wild grapes, and cut wood and wild hay on the lot conceded to them, prior to December 20, 1803 ; that her husband used the southern arpent, or the one adjoining Gervais, and Cambas, the northern one ; that they each owned an arpent in severalty and not two arpens in common ; that they were partners in business, but not in the land.

8. A certificate of confirmation to Gervais & Ortiz, issued by recorder Conway, in 1834, and an official survey, numbered 2964. The claims of Gervais & Ortiz were included in one certificate and survey. They were embraced in the list of confirmations furnished by Recorder Hunt to the surveyor general.

9. Proceedings of the commissioners under the act of 1832, upon the claim of Cambas. These proceedings contain the minutes of testimony taken before Recorder Hunt, under the act of 1824. These minutes contain evidence that Cambas & Ortiz cut hay and timber on the two by forty arpens conceded to them, prior to December 20, 1803, and also evidence that they afterwards made a parol division, by which the southern arpent was set apart to Ortiz, and the northern one to Cambas ; and also evidence that each possessed and used the portion of the land allotted to him prior to December 20, 1803. The decision of the board upon the claim of Cambas is in these

words : " The board are unanimously of opinion, that this claim is confirmed by the first section of the act of congress of 1812." To the admission of these proceedings in evidence, the plaintiffs excepted.

10. An official survey for Cambas, numbered 3081, made in 1836, and which includes the land in controversy.

11. The petition of the administrator of Cambas to the general court, dated October 3, 1819, praying an order for the sale of " the half and undivided moiety of a tract of land situated in the prairie, south of the Little river, near St. Louis, having two arpens in front on forty arpens in depth," to pay debts, together with an order of sale, according to the prayer of the petition. The derivative title of the defendant, under this sale, was admitted.

The plaintiffs, in rebuttal, offered some evidence, with a view to show a title by prescription and the statute of limitations. They also proved that Cambas, some years before the change of government, went to the Indian country, on the Osage, where he remained until he died, a year or two afterwards.

The court gave the following instructions asked by the plaintiffs :

1. The confirmation given in evidence by the plaintiffs, did vest in Antoine Soulard and his legal representatives, the legal title to the land therein granted, as against the United States.

2. And as against the said Clark, the defendant, the said confirmation did vest in the said A. Soulard and his legal representatives, a legal title to said land, unless the defendant has shown in himself or some other person a better title to said land.

3. The official survey given in evidence by the plaintiffs, (No. 3124,) is evidence of the locality and boundaries of the land granted to Soulard by the said confirmation, and is conclusive evidence thereof against the United States.

4. And as against said Clark, the defendant, the official survey, (No. 3124,) is evidence of the locality and boundaries of the land granted to A. Soulard and his legal represen-

tatives by said confirmation ; and the jury will consider said survey correct, unless the defendant has shown to their satisfaction that the said survey has been incorrectly made, or that it does not correctly give the locality and boundaries of the land granted by said confirmation to A. Soulard and his legal representatives.

5. That the proceedings of the board of commissioners, organized under the act of congress of July 9, 1832, on the land claim, No. 248, of the commissioners' report, in the name of Jean Cambas, as given in evidence by the defendant, is not any evidence that the title to the land therein mentioned was confirmed or granted by the act of congress of June 13, 1812.

6. That unless Jean Cambas or some legal representative of him, had, at the time of the passage of the act of congress of June 13, 1812, a right, title or claim to the land mentioned in the proceedings of the board, given in evidence, the title to said land was not confirmed to said Cambas or to any legal representative of him, by the said act of congress of 1812.

7. That unless the said Cambas or some legal representative of him, had a right, title or claim to the land, subsisting at the time of the passage of the act of 1812, and also that the said Cambas did inhabit, cultivate or possess the said land prior to the 20th day of December, 1803, the title to said land was not confirmed to said Cambas or any legal representative of his, by the act of congress of 1812.

8. If the jury believe from the evidence that, before the passage of the act of 1812, said Cambas abandoned the right, title and claim which he had, if any, to said land, under the Spanish government, then the title to said land was not confirmed by the act of congress of June 13, 1812.

9. And if the jury believe from the evidence, that said Cambas had no family—no wife, child, heir, nor blood relation in the country ; that he left the civilized settlements and went into the Indian country before the change of government, with an intention of not returning to St. Louis, and that he died in

said Indian country, without having returned to St. Louis, and that no claim was set up in his name to said land, until long after the passage of the act of June 13, 1812, these facts or any of them the jury may consider as evidence tending to show an abandonment by him of his claim.

10. If the jury believe from the evidence, that the Cambas claim is in whole or in part located incorrectly by the survey thereof, given in evidence, and that the true location thereof would not include the said land in dispute, and that said land was included in survey No. 3124, then, as to said land or part thereof, which would not be included by a true location of the Cambas claim, and which is included in survey No. 3124, the defendant and those under whom he claimed, have no title as against the plaintiffs in this action.

After a verdict and judgment for the defendant, the plaintiffs appealed.

*E. & B. Bates*, for appellants, argued the following, among other points : 1. Cambas never claimed title to any lot of one by forty arpens. The origin of the defendant's title is a joint concession to Cambas & Ortiz, and the administrator of Cambas, in petitioning for the sale of the land, describes it as the *undivided moiety* of a tract of two by forty arpens. It is plain, therefore, that, prior to the 20th of December, 1803, there was no lot of one by forty arpens, and of course, no continuing claim to any such lot on the 13th of June, 1812; and it is plain that Cambas never inhabited, cultivated or possessed any such lot. 2. The concession to Cambas & Ortiz is void by its terms, because not established within a year and a day, nor ever afterwards. The Spanish government then did not encroach upon any right of Cambas, when, in 1798, it conceded the same land to Soulard. 3. The defendant did not show a confirmation by the act of 1812. The volunteer statement by the board under the act of 1832, of their opinion that the claim was confirmed by the act of 1812, is no evidence. The testimony of Mrs. Ortiz did not establish inhabitation, possession or cultivation prior to December 20, 1803..

Again, it was neither a town lot, out lot or common field lot, within the meaning of the act of 1812. Again, if Cambas ever had possession of the land, he abandoned it. He went to the Indian country in about 1783, and never returned. Abandonment will be presumed under such circumstances. 11 Mo. Rep. 3. Again, the claimant cannot now show a confirmation by the act of 1812, having failed to prove it up under the act of May 26, 1824. If the defendant failed to show a confirmation by the act of 1812, a confirmation by the act of 1836 will not help him. 4. The record of the proceedings of the board of commissioners, under the act of 1832, was improperly admitted in evidence. It did not show that the claim was recommended for confirmation, so as to bring it within the confirming act of 1836, which was the only legitimate purpose for which it could be admitted. It was calculated to mislead the jury, as it contained a statement of the opinion of the board that the claim was confirmed by the act of 1812. The error of admitting it is not cured by the instruction of the court that it was no evidence of a confirmation by the act of 1812. *State* v. *Mix*, 15 Mo. Rep. 153. It contains the minutes of testimony taken before Recorder Hunt in 1825, which is not lawful testimony. *Gamache* v. *Piquignot*, 17 Mo. Rep. 310. 5. The plaintiffs showed title by prescription and the statute of limitations.

*Geyer & Dayton*, for respondent. 1. The act of 1812 amounts to a statutory confirmation to all persons who come within its provisions, and the claimants have only to show that their cases are embraced by it. *Vasseur* v. *Benton*, 1 Mo. Rep. 212. *Gurno* v. *Janis*, 6 Mo. Rep. 330. *Montgomery* v. *Landusky*, 9 Mo. Rep. 705. *Page* v. *Scheibel*, 11 Mo. Rep. 167. When the claimant proves inhabitation, cultivation or possession, his title is equivalent to a patent or grant from the date, June 13, 1812, and the United States cannot divest the title by grant or confirmation to another. 9 Mo. Rep. 323. It is a title superior to a confirmation by the act of 1816, (*Vasseur* v. *Benton*, 1 Mo. Rep. 212;

*McGill & Somers* v. *McKee*, 15 Mo. Rep. 80,) and of course superior to any confirmation by the act of 1836. It has been found by the jury that Jean Cambas, prior to December 20, 1803, was an inhabitant of St. Louis, and before that day inhabited, cultivated or possessed, as owner, an out-lot or common field lot, and that the land in dispute is embraced in the boundaries of said lot, and that it was not abandoned by him or his representatives, prior to June 13, 1812. All the instructions asked by plaintiffs were given, so that there can be no complaint on that score. The facts constituting an abandonment were fairly submitted to the jury. Abandonment is not presumed, and he that relies on it must show such facts as will establish an intention to abandon. *Primm* v. *Lajoy*, 3 Mo. Rep. 368. The instructions in respect to the surveys were correct.

SCOTT, Judge, delivered the opinion of the court.

This controversy involves the comparative merits of titles under the act of the 13th of June, 1812, resting upon bare inhabitation, cultivation or possession, without any proofs before the recorder of land titles under the act of 26th of May, 1824, and a confirmation under the act of 29th of April, 1816, or of the 4th of July, 1836. The claims of both parties to this suit were barred and made void by the act of the 3d of March, 1807, for the reason that notices, in writing, and the written evidences of their claims, were not delivered to the recorder of land titles prior to the 1st of July, 1808. The concession under which Clark, the defendant, claims, was made in 1767 ; that under which the plaintiffs claim was made in 1798. Much was said in relation to a condition annexed to the concession granted to Cambas & Ortiz, the non-compliance with which had caused a forfeiture of their grant, which being thereby annexed to the royal domain, the land covered by it was lawfully conceded to Antoine Soulard, under whom the plaintiffs claim. The first American civil commandant of Upper

Louisiana, speaking of land titles, says : "·That the same formality· and solemnity· were observed· in· the annexation of lands to the domain, as when they were granted· or conceded. All annexations were declared by an ordinance of Louis XV, in 1743, to.be null and void and of no effect, unless they were *judicially decreed*. The same principle obtained under the Spanish authorities, and they deemed it obligatory." Stoddard's Sketches, 247. There is no evidence that the concescion to Cambas & Ortiz was ever re-annexed to the domain, in any manner, or that there ever was a design to do so. These remarks are made, not as having any influence in the determination of this controversy, but to remove all complaints of hardship, as it is obvious that, after the 1st of July, 1808, all incomplete French or Spanish grants, of which no notice had been given prior to that time, must derive their validity from the laws of the United States. So, whether we look to the laws of France, Spain or the United States, the claim of Cambas is prior, in point of time, to that of Soulard. As to the various objections that were urged against the claim of Cambas, they cannot now be entertained in this court. The law and facts on which that claim is based, have been passed upon by the court and jury which tried this cause. The law, as maintained by the plaintiffs, was declared to the jury. All the law of their instructions was pronounced by the court. No specific complaint is made of any instruction asked by the defendant. If there is any error in the cause, it is in the finding of the facts, and that is a matter with which this court does not interfere.

1. It was urged by the plaintiffs that the court committed error in permitting the record of the proceedings of the last board of commissioners, under the act of the 9th of July, 1832, on the claim of Cambas, to be read in evidence. The proceedings of the same board, on the claim of Soulard, were given in evidence. If they were proper evidence in the one case, they were in the other. The record contained matters, it is true, which were not evidence against the plaintiffs. But the rule of

Soulard *v.* Clark.

practice is well settled that, where a record is proper evidence of a fact, it will be admitted, and the opposite party is left to his motion to exclude the irrelevant matter from the consideration of the jury. An instruction was given, that the record was no evidence that the title of Cambas to the land therein described, was confirmed by the act of the 13th of June, 1812. If this did not reach the objection, it should have been made more specific.

2. It was said that the claim of Cambas was not recommended for confirmation by the board, and therefore it was not within the provisions of the act of July 4th, 1836. That act does not require that a claim should, in terms, be recommended for confirmation, in order that it may come within its purview. The act confirms " the decisions in favor of land claimants." Now, the opinion of the board, that the claim of Cambas was confirmed by the act of the 13th of June, 1812, is certainly a decision in his favor.

3. Whether the claim of Cambas was a lot, whether it was inhabited, cultivated or possessed prior to the 20th of December, 1803, and whether it was abandoned, were questions submitted to the jury under directions from the court, in conformity to the views of the plaintiffs themselves ; and as there has been a finding in relation to those facts, this court cannot now interfere. There was evidence from which the jury might have found that there was a partition of the joint concession to Cambas & Ortiz. If such was the fact, then each of them had a claim, and we are not aware of any law which would prohibit each claimant, under such circumstances, from receiving a confirmation for his separate interest, nor of any principle which would prevent the act of 1812 from enuring in that manner. The thing is so reasonable in itself, that an argument is scarcely needed to show its propriety. The government loses nothing by such a course. No more land is granted in the end than if the entire confirmation had been made to the claimants jointly.

As Clark, the defendant, is in possession, and as the jury

have found a confirmation of the claim under which he holds by the act of 1812, no purpose is subserved by attacking his title as derived from the proceedings of the Court of Probate. The confirmation by the act of 1812 is a superior title to any claimed by the plaintiffs, and must defeat their recovery, whether there is any title in Clark or not.

The preceding observations answer the objections urged against the admission of the survey of the Cambas lot, in evidence. None of the instructions raised any question in relation either to the law of prescription or the statute of limitations. Adverse possession of sufficient duration, no doubt, will confer title, both under our law and the Spanish law. If there was possession in Soulard, of a sufficient length of time to confer title, it is unfortunate that he permitted the defendant to occupy the premises undisturbed, so long as to enable him to make the improvements which the record shows are upon the lot in controversy. No reason appears why a more summary remedy than an ejectment was not adopted.

4. An intimation was made that a confirmation under the act of the 13th June, 1812, is unavailing as a title, unless the claimant has, in pursuance to the provisions of the act of 26th May, 1824, made proof before the recorder of land titles of his inhabitation, cultivation or possession, prior to the 20th of December, 1803. By the last mentioned act, claimants were only allowed the period of eighteen months to make their proofs ; so if any has failed to do so, it mattered not for what cause, and however inevitable it may have been, under this view, his title is gone. The act itself, by its terms, creates no such forfeiture or consequence. So far from it, its obvious intent was, to enable the government to survey and set apart the lots reserved for school purposes by the act of 1812, to the several villages therein named. So, the only inconvenience which a failure to make the necessary proof could superinduce, would be a collision of the title of a claimant with that of the schools. But, in the event of such conflict, the act no where pretends that the title of the claimant shall give way to that of

the schools. No principle is known which warrants a court in implying a destruction of a right, in the interpretation of statutes. So penal a consequence should never be left to inference. By an act of the same date with that of the 26th May, 1824, congress has shown that it understands the terms that are to be employed when a right is to be barred or made void, as may be seen by the provisions of the act for organizing a court for the final adjustment of land claims in Missouri. The same thing appears by the act of the 3d of March, 1807, respecting claims in this state, then a territory.

The act of the 13th of June, 1812, though enacted by congress, yet is local, but, though local, is of very great concern to the city of St. Louis. The principles involved in its construction cannot affect even remotely other portions of the United States. That act is familiar to our courts and has been for a great many years. Indeed, it is believed that it is as often cited in connection with the land litigation of St. Louis as any other statute, state or federal. These considerations induce us humbly to claim this act as one of our own, and to indulge the hope that it may always receive that interpretation which has been put upon it by our courts, acquiesced in for a long time by the bar, and acted on by the community.

Ever since the opinion in the case of *Vasseur* v. *Benton*, which was decided by this court in 1823, the doctrine has prevailed that the act of the 13th of June, 1812, operated as a full confirmation of claims to town or village lots, out lots or common field lots, which were inhabited, cultivated or possessed, prior to the 20th of December, 1803. That act was considered as the title paper, and the party showed his right by proof of the required act, just as he would have done, had he produced a patent conveying him a lot which he inhabited, cultivated or possessed prior to the 20th of December, 1803. No case is known in which this doctrine has been departed from. It was always supposed to be confirmed by the principles announced by the Supreme Court of the United States, in the case of *Strother* v. *Lucas*, 12 Peters. Since the case first

referred to, the point has arisen in many cases, and it has always been regarded as settled. It has never been brought up here for revision. In pronouncing opinions, the matter has always been considered as so well settled, that it has merely been mentioned as an axiom would be. *Montgomery & wife* v. *Landusky*, 9 Mo. Rep. 717. *Gurno* v. *Janis*, 6 Mo. Rep. 330. The title having passed by the confirmation of the act of 1812, no subsequent legislation of congress could affect it. When the act of 1824 passed, these titles, having been previously confirmed, could only be affected by the legislation of this state. If they were confirmed, and that confirmation was a full title, (as is asserted in *Strother* v. *Lucas*,) there was no power in congress to affect them by its legislation. In what a novel condition are these titles placed, on the supposition that congress could affect them by subsequent legislation. What was their state from the act of 1812 until that of 1824? There is nothing in the act of 1812 which shows that there could or would be legislation thereafter in relation to private claims. Future legislation in relation to the reserved lands might have been contemplated, but on no principle could it be supposed that claims, which had already been confirmed, would be affected by the imposition of subsequent conditions. The acts of 1812 and 1824 may be regarded as *in pari materia*, so far as the school lands are concerned, and the principles of construction applicable to such statutes may have play in relation to them, but to apply such principles to the individual claims would be like considering the terms of an act annulling a grant, in connection with the previous one conferring it, in order to ascertain the intent of the law makers.

No inconvenience can result from adhering to the received construction of the act of 1812. A claim now for the first time presented, disconnected with any possession, and relying solely on proof of inhabitation, cultivation or possession, prior to the 20th of December, 1803, to defeat another title, would not receive much consideration, and might, without any apprehension of injurious consequences, be submitted to the

consideration of a jury acting under the directions of the court. But to declare those titles invalid, in which occupants under them have confided for more than thirty years, might bring ruin on many families that have never dreamed that there was any defect in their titles.

Judge Ryland concurring, the judgment will be affirmed. Judge Gamble did not sit in the case.