HENRY W. WILLIAMS, Respondent, *v.* CHARLES J. CARPENTER, Appellant.

1 *Practice—Trial—Jury— When presumed to be waived.*—Where both parties to a suit are present and submit the cause to the court on the evidence, and neither of them demands a jury, it may be presumed that the right of trial by jury is waived.

2. *Confirmation, Certificate of— Admissibility of Parol Evidence to correct errors in.*—Suit in ejectment was brought by the representatives of Joseph Lacroix to obtain the title to certain property adjoining St. Louis. The proof embraced a certificate of confirmation, under the act of Congress passed May 26, 1824, which named "Louis Lacroix" as the person entitled to the property in dispute. If the case had proceeded upon the theory that Joseph Lacroix and Louis Lacroix were two distinct individuals actually living in St. Louis at the date of the certificate, parol evidence would be inadmissible to show that the instrument was intended for a different person than the one therein named, thereby taking the title from Louis Lacroix, in whom it had been vested, and transferring it to one in whom it had not been vested. But parol evidence, by all the authorities, was admissible to show that Louis Lacroix resided in a different city, and died long before the claim to the property was proved, and that the person under whom the adverse party claimed was an imposter. And where the proof ascertained that there was no other person within the class to whom the certificate might have been given but Joseph Lacroix, parol evidence was admissible to prove his identity with the person described in the instrument as "Louis Lacroix," and a mistaken insertion by the recorder of the name of "Louis" instead of " Joseph."

3. *Confirmation, Certificate of— Nature and weight of, as Evidence.*—A certificate of confirmation under the act of 1824 does not convey title, but is merely *prima facie* evidence of the existence of certain facts at a former date, and may be rebutted or disproved by other competent evidence. It is in the nature of a deposition, and the testimony of witnesses or a deposition would be admissible to correct its errors.

4. *Hunt's Minutes, Evidence of what.*—The minutes of Recorder Hunt, where objection is offered, are inadmissible as a deposition to prove the facts testified to by witnesses therein. But in the absence of any such objection, they are admissible, like any other document, to show what they contain. Whether or not the contents are relevant or competent on the issues in the case, must be determined by the general rules of evidence.

*Appeal from St. Louis Circuit Court.*

This was an action of ejectment to recover possession of a part of a lot of one by forty arpents in the Grand Prairie common fields adjoining St. Louis, and embraced in United States survey 1664. Both parties claimed title under the proof made before Recorder Hunt, pursuant to the act of May 26, 1824, and shown by his minutes of testimony. They also relied upon a certificate of confirmation, issued by said Hunt to " Louis Lacroix," of the tract in controversy. The evidence in the case did not differ materially from that shown on the former trials of the same cause, except that it embraced testimony that Joseph Lacroix, under whom plaintiff claims, had actually inhabited and cultivated this lot prior to the change of government in 1803. The evidence will be found reported in full in 28 Mo. 454, and 35 Mo. 52, and should be read in order to a proper understanding of this case.

In the second trial of this cause, counsel for plaintiff asked leave to file an amended petition, which was refused, and it went up to this court on the original pleadings. At the last trial, the court below granted leave to file such amended petition, being in some respects in the nature of a bill in equity, whereupon counsel for defendant moved to strike out portions thereof, which motion was overruled. But as the case passed upon by the present decision is considered as an action of ejectment on the original petition, the new pleadings and arguments of counsel relating thereto need not be stated here.

*Krum, Decker & Krum*, for appellant.

I. The court below erred in admitting illegal and incompetent testimony. The testimony objected to neither proves nor tends to prove the issues made by the pleadings. If it was necessary on the part of the plaintiff to prove what took place before the

recorder of land titles in 1825, so as to show that the recorder made a mistake in his record entry, it is plain that the evidence objected to does not tend to prove this issue.  For any other purpose, or in respect to any other issue in the case, the testimony objected to is wholly foreign and immaterial.

II.  The evidence in the record does not support the finding of the court below, as recited in the decree..

III.  The decree in this case is predicated upon the finding of immaterial issues or facts.

*Glover & Shepley*, for appellant.

I.  The case is a peculiar one.  The purpose of the petition is not exactly to reform a deed or other title paper, but to reform at most some affidavits or depositions filed with the recorder as proofs of title, or an opinion of the recorder, which is not a title, but evidence *prima facie* of title.  The proceedings are very nearly akin to a bill to reform the testimony of a witness, alleged to have been erroneously taken down by the notary, if such a thing could be.  Of course, if such a thing can be done by the decree of the court, three facts ought to be clearly proved, viz: 1. What the witness did testify.   2. That a different statement was written down by mistake.   3. That the recorder made a mistake in his certificate.

But to undertake to prove, as was done in this case, that a witness went before Recorder Hunt and testified that "Joseph Lacroix" cultivated a lot, and that the recorder made a mistake and wrote "Louis" in the place of "Joseph," by evidence that only contradicts the statement of one witness as his testimony is put down by the recorder, is an absurdity.  It might as well be said that every officer who takes depositions makes a mistake when he writes down from the mouth of one witness what is afterward denied by another.  We deny that there is any real evidence of the alleged mistake.  Mr. Evans is the only witness, and he was not present when the evidence was given in or written down.  Further, the right to correct a mistake belongs to him only who had the prior right, but it is not shown that Joseph Lacroix had

any prior right; and if this were shown, he would not need to reform the proofs. (19 Mo. 570 ; 25 Mo. 448.)

II. Plaintiff's cause of action is barred by the statute of limitations.

It arose and was perfect the moment when the alleged mistake was entered on the recorder's minutes. That mistake, if in fact it was made, vested the title in Louis Lacroix in violation of Joseph's right, and Joseph Lacroix had a right of action immediately. It was not necessary, in order to give Joseph Lacroix a right of action, that Louis should enter on the land or possess or improve it. These facts might not transpire at all, and Joseph Lacroix would remain without any remedy to protect himself against the ultimate loss of his rights. Adverse possession is a necessary element in some particular causes of action. On such actions the statute will not run until there is an adverse possession. This is the fact in relation to ejectment, forcible entry and detainer of lands, and replevin and detinue of chattels. Without adverse possession, such causes of action cannot exist. Not so with many other actions, such as for deceit or trespass, or a bill for specific performance, or for recision of a contract, or to set aside a fraudulent conveyance, or enforce a trust, or reform any instrument whatever. These may state a perfect cause of action without adverse possession. To say that such actions are not limited unless there is an adverse possession, is to say they are not limited at all, or, at most, not limited unless the opposite party shall give his consent to such limitation by entering into possession. The present suit is one of the latter class. (Eigelberger v. Kibler, 1 Hill Ch. R. 113 ; Whalley v. Whalley, 3 Bligh, 9, 12 ; Hamilton v. Hamilton's Exr., 18 Pa. St. 22 ; Jones v. Connoway, 4 Yeates, 109 ; Mayfield v. Simondson, Cooke's Tenn. R. 437 ; Finley v. Harrison, 5 J. J. Marsh. 154, 161 ; Young v. Mackall, 3 Md. 407–8 ; 2 Story Eq. Jur. 1027, § 1521, n. 2 ; 7 Mo. 610.) Joseph Lacroix could have sued in 1825, but did not. The statute of limitations immediately began to run, and ran on over forty years from the time when the cause of action accrued, as against any proceeding in equity, to October 23, 1865.

When the statute is once set in motion, it does not stop. (Smith

v. Newby, 13 Mo. 159 ; Landes v. Perkins, 12 Mo. 238 ; 2 Story Eq. Jur. 1028.)

Such being the right of the party to sue, and he being under no disability, the statute of limitations is applied by analogy to this case. (Brault v. Howard, 39 Mo. 21 ; 6 Mo. 257 ;. 26 Mo. 112 ; Clark v. Swift, 3 Met. 390 ; Brink v. Brink, 1 Bibb, 255 ; Smith v. Carney, 1 Litt. 296 ; Taylor v. Bates, 4 Dana, 200 ; De Cordova v. Smith, 9 Texas, 129 ; id. 150 ; Collard v. Tuttle, 4 Verm. 492.)

We concede that the law is settled that, in respect to causes of action founded on fraud or mistake, there is no right of action until the fraud or mistake is discovered, and until such discovery the statute of limitations does not begin to run. But it is well settled that as soon as the fraud or mistake is discovered, the statute does run. (2 Scho. & Lefroy, 636 ; Brookshank v. Smith, 2 Young & Col. 60 ; Pugh v. Bell et al., 1 J. J. Marsh. 402 ; Crane v. Prather, 4 id. 77 ; Craft v. Townsend, 3 Dess. 239 ; Shields v. Anderson, 3 Leigh, 729 ; 1 Watts, 401 ; Heywood v. Marsh, 6 Yerger, 69, 73.) No one claiming under Joseph Lacroix can be suffered to dispute the confirmation, record, or certificate. They claim under them, and the law presumes that they knew them from their first existence. (3 How. 333 ; 1 Gil. 317, 330-1 ; 2 Ash. 312.) When, then, are we to fix the time of the discovery of the supposed mistake ? We insist that it is fixed, by the law of the case and the pleadings, immediately after the fact of the confirmation, in 1825. A plaintiff cannot, by inserting in his petition a statement that he only made the discovery at a late day, defeat the statute of limitations ; hence, he must aver and prove when in fact the discovery was made. (Shelby v. Shelby, Cooke's Tenn. R. 183.) An undiscovered fraud or mistake is an exception forced upon the statute of limitations by considerations of necessity. But no one can take the benefit of an exception without pleading and proving his case within it. Plaintiff has made no explanation of the circumstances under which the alleged mistake was discovered ; nor has he denied knowledge of it by Joseph Lacroix.

The conclusion, therefore, must be that he knew all about it

as early as 1825, and as soon as made. (Carneale v. Parker, 7 J. J. Marsh. 455 ; Jenkins v. Brewitt, 5 Blackf. 7 ; Bruce v. Child, 4 Hawks, 372 ; Westbrook v. Harbeson, 2 McCord's Ch. 112, 118 ; Steele v. Kinkle, 3 Ala. 352 ; 2 Porter's R. 58, 73–4 ; Bertine v. Varian, 1 Edwards' Ch. 347 ; Chalmers v. Bradley, 1 Jac. & Walker, 66–7.) If Joseph Lacroix had held the legal title, it would have given him constructive possession ; but the legal title was in Louis Lacroix, and the constructive possession was always in him or his heirs or their assignees. (Green v. Liter, 24 Mo. 414 ; 8 Cranch, 232.) So that, up to the time of filing the original petition, in 1856, no possession had existed under Joseph Lacroix for thirty-one years ; and if that petition had set forth the equity of Joseph Lacroix, it was extinguished by limitation of twenty years. But the right of Joseph Lacroix to the land, as now claimed in equity, was not sued for in 1856. That suit of 1856 was a mere ejectment, and this court decided (35 Mo. 70) that no recovery could be had on the petition, and that another cause of action must be set forth to meet the case. Hence, in 1865, for the first time, plaintiff sued on his equity and dismissed his first petition. (Gray v. Berryman, 4 Munf. 181 ; Christmass v. Mitchell, 3 Iredell's Ch. 535 ; Holmes v. Trout, 1 McLean 1 ; Holmes v. Trout, 7 Pet. 171 ; 6 Pet. 61 ; Lucard's Lessee v. Davis, 6 Pet. 124.) This amended petition having been filed, the original cause of action ceased to exist. (Gen. Stat. 1865, p. 670, § 13 ; Barry v. Ambrose, 28 Mo. 46.) If the bar of the statute may be defeated in this manner, a claimant may commence a suit of any sort for a piece of property, keep it going until defendant's witnesses are dead, and then disclose his real claim by an amendment.

This being an action for relief (*i. e.*, a bill in equity), and not being sued on till October 23, 1865, the act of 1849 had been running on it sixteen years. This statute was borrowed from New York (Voorhies' Code of 1864, p. 99, § 97 ; Bruce v. Tilton, 25 N. Y. 199, 200), in which it was held that adverse possession had nothing to do with this statute. (Spore v. Wells, 3 Barb. Ch. 202–3 ; Roberts v. Sickles, 30 Barb. 178 ; Alexander v. Pendleton, 8 Cranch, 462.)

No question is made that an adverse possession which would bar an action at law if the title was legal, will bar all remedy by bill of equity in the same case if the title is equitable only. To such a case the statute of limitations expressly applied in equity. The ground of this defense is not strictly that of limitation. It is called lapse of time, and laches or staleness of demand. (Story Eq. Pl. p. 618, § 756, *a ;* Prevost v. Gratz, 6 Wheat. 492; 1 McLean, 147; 9 Pet. 405; Bonney v. Ridgard, 1 Coxe's Ch. Cas. 149; Beckford v. Wade, 17 Ves. 97; Johnson v. Johnson, 5 Ala. 102; Giles v. Baremore, 5 Johns. Ch. Cas. 551; Michoud v. Girard, 4 How. 561; Ellison v. Moffat, 1 Johns. Ch. Cas. 46; Ray v. Bogert, 2 Johns. Ch. Cas. 432; Jenkins v. Pye, 12 Pet. 254, 262; Ward v. Van Bokkelen, 1 Paige, 100; Fenwick v. Macey's Heirs, 1 Dana, 278; *id.* 280; 2 Scho. & Lefroy, 637; *id.* 297; Ralls v. Hughes, 1 Dana, 408; Baird v. Baird, 5 J. J. Marsh. 581–2; Hunt v. Hamilton, 9 Dana, 91; Atkinson v. Robinson, 9 Leigh, 393; Barnett v. Emerson, 6 Mon. 607; Hite *et al.* v. Hite, 1 B. Mon. 177; McLean v. Barton, Harrington's Eq. R. 285; Perry v. Craig, 3 Mo. 516; Pendleton v. Galloway, 19 Ham. 178.)

It may be admitted that while no suitor can have relief in equity who does not come in a reasonable time, and in the lifetime of the parties to the transaction to be investigated, the exact period of time is not definitely fixed, but a large majority of such cases have been cut off by thirty years, and many by less time, there being no disability on the part of claimant. What is unreasonable delay, and makes a demand stale in equity, depends much on the period of limitation fixed at law. Our statute of 1825 made twenty years the legal bar of time; the statute of 1847 made ten years; the statute of 1849 made a positive statutory bar to bills for relief in ten years from the time the cause of action accrued; so that after 1847, when the statute bar by time was ten years at law, the plaintiff waited fifteen years before suing the present action. Spore v. Wells, 3 Barb. Ch. 202, was a case in which the claim was held stale in fourteen, the legal bar being ten years.

III. The defendant, Carpenter, is an innocent purchaser of the property in dispute, for a valuable consideration, paid without

notice of any claim under Joseph Lacroix or his representatives. (2 Ashmead, 312 ; 5 Call. 537 ; 1 Gilman, 317, 330–1 ; 3 Leigh, 365 ; 7 *ib.* 393, 398 ; 4 Scammon, 37 ; 6 Paige, 323 ; Vaughn v. Tracy, 22 Mo. 415 ; Beattie v. Butler, 21 Mo. 321.)

IV. The decree in the case is peculiar ; it does not grant the relief prayed for, nor respond to the prayer of the petition ; the paper is not reformed ; no title is vested in the plaintiff ; no decree, in fact, is made, but a judgment given as in ejectment or on a legal title, when there is no evidence of any legal title in plaintiff.

*Whittelsey,* for respondent.

I. A name is but one of the means of identifying the person. He may be identified in other ways ; and where the person is identified the mistake in the name shall not vitiate the patent, conveyance, or deed. (See authorities cited at length by counsel in 35 Mo. 52.)

To have received a title by the act of 1812 it was necessary that the claimant should have been an inhabitant of the village of St. Louis, and should have both claimed and possessed and culti-vated the lot. All these evidences of identity of person attach to Joseph Lacroix ; none of them to Louis, who died prior to 1810, there being no evidence to show that Louis was an inhabitant of St. Louis or cultivated or claimed this lot, excepting the evidence of the claim and the patent certificate in the name of a Louis Lacroix. The certificate issued by Hunt may have been filled up with the proper name, and was delivered to the proper person, and the object of the petition and evidence of plaintiff was to show that it had been delivered to the proper person, Joseph Lacroix, whether issued in his name or in that of Louis.

II. The court has authority, not to correct the error upon the minutes of the United States Recorder, but to prevent parties from using the evidence which the minutes present for the pur-poses of a fraud ; and in this way a court of equity can correct the mistake and prevent the fraud. (Lytle v. Arkansas, 22 How. 235 ; Lindsey v. Hawes *et al.*, 2 Black, 554 ; 9 How. 314 ; Cun-ningham v. Ashley *et al.*, 14 How. 377 ; Wright's Heirs v. Christy's Heirs, 39 Mo. 125.)

III. The defendant had not been in possession for ten years at time of suit brought, and there is no bar by lapse of time except by an adverse possession. (Bollinger v. Chouteau, 20 Mo. 89.) In this case the legal title passed by act of Congress of June 13, 1812. The proof and minutes of the recorder, and the certificate issued by him, are but evidence of the grant of 1812; and as Joseph Lacroix took the title by the grant of 1812, he could sue no one to correct any mistake until some one claimed by virtue of that mistake, which was not until 1852.

IV. The defendants are not innocent purchasers for a valuable consideration in good faith, for the reason that they have never procured the legal title to the land. They claim simply because they are the representatives of a man named Louis Lacroix; but if he did not possess and cultivate prior to 1803, and did not appear to prove his claim before Hunt as recorder (and all the evidence shows that he did not), then the defendant did not procure any evidence of title under which to claim as innocent purchaser.

*Hill*, for respondent.

I. A claim to real property will not be barred by a lapse of time shorter than that which would have barred an action of ejectment at law, and the adverse possession is the only test to be applied. (Ang. on Lim. § 25; Dugan v. Gittings, 3 Gill. 138; Bollinger v. Chouteau, 20 Mo. 89; McNair v. Lott *et al.*, 24 Mo. 285; 6 Monroe, 192; 4 How. 503.) Courts of equity act in obedience to the statute of limitations, and not in analogy to them. (Ang. on Lim. § 26; Hovendon v. Lord Annesly, 2 Scho. & Lefroy 607; Bollinger v. Chouteau, 20 Mo. 89; Chalmondely v. Clinton, 2 Meriv. Ch. 171; Chouteau v. Burlando, 20 Mo. 482; Lytle v. Arkansas, 22 How. 193.) In actions for real estate, or concerning real estate, whether the cause of action be legal or equitable, or both legal and equitable, the bar of the statute of limitations must depend entirely upon the adverse possession. No different rule can be settled with any safety. (Magwire v. Tyler, 1 Black, 195; Chalmondely v. Clinton, 2 Meriv. Ch. R. 176; Ang. on Lim. § 326; 25 Mo. 182.)

II. Plaintiff claims that he is entitled to prove in law and in

equity who was the person intended by the name of Louis Lacroix. If Joseph Lacroix was the person intended to be described in the certificate of confirmation, his heirs and grantees are entitled to the benefit of the confirmation; and the evidence of confirmation— viz : the recorder's certificate—will inure to the benefit of Joseph Lacroix's grantees. The confirmation certificate issued to Lacroix by Hunt, under the act of 1824, is only *prima facie* evidence of title under the act of 13th June, 1812. (McGill v. Somers, 15 Mo. 80 ; Joyal v. Rippey, 19 Mo. 660; Montgomery v. Sandusky, 9 Mo. 705.) To this extent the confirmation certificate is evidence of a confirmation, under the act of 13th June, 1812, to Louis Lacroix, an inhabitant of the village of St. Louis before the 20th of December, 1803, who cultivated a field-lot in the Grand Prairie belonging to said village before 1803. The title of the United States has passed, by force of the act of 1812, to a Lacroix who will answer the descriptions in the acts of Congress. No names are given in the act of 1812. The confirmations are *en masse* to the inhabitants of St. Louis who cultivated or used lots in, adjoining, or belonging to, the town of St. Louis. (Glasgow & Taylor v. Hortez, 1 Black, 514.) The United States had parted with all title to this lot on the 13th June, 1812, and the question in this case is, to whom was the grant made ? Plaintiff establishes, by evidence conclusive and uncontradicted, that Joseph Lacroix cultivated this Grand Prairie field-lot in Spanish times ; that he proved up this cultivation before the recorder in March 3, 1825, by Pierre Barribeau, the adjoining proprietor on the north; that the recorder entered the name Louis for Joseph; and the cause of this error appears on the face of the minutes of the recorder who writes the affidavit of Louis Lacroix, and the signature affixed to it is "Joseph Lacroix—his ⋈ mark."

Plaintiff insists upon the clear right of the court to apply the rule "*falsa demonstratio non nocet*"—if there be a sufficient description of the person or subject intended, independent of the *falsa demonstratio*. This rule can be applied at law or in equity, but it has been much more frequently applied in equity than at law. The old rule making a distinction between the rules of evidence in cases arising under wills and cases arising under

deeds has been abolished for nearly a century. (1 Greenl. on Ev. §§ 289, 291; Beaumont v. Fell, 2 P. Will. 141; 2 Phillips on Ev., Cow. & Hill's notes, 769, 717, 770–3, etc.) So, if the ambiguity upon the face of the tabular abstract of confirmations be latent, the evidence is clearly admissible. (1 Greenl. on Ev. § 300.) Pierre Barribeau is bounded south by Joseph Lacroix, and Louis Lacroix is bounded north by Pierre Barribeau. Louis Lacroix appears as a witness for Pierre Barribeau, and signs his name " Joseph Lacroix — his ⋈ mark."

The evidence is also admissible at law under the rule "*falsa demonstratio non nocet, cum de corpore constat.*" Mr. Greenleaf states the rule as embracing " those cases in which, upon applying the instrument to its subject matter, it appears that, in relation to the subject matter, whether person or thing, the description in it is true in part, but not in every particular." 1 Greenl. on Ev. 301.) Whether the case be tried at law or in equity, the rules of evidence are the same; and the only question in the case, whatever the form of the proceeding may be, is whether parol and documentary evidence is admissible to show that Joseph Lacroix is the person intended, and whose field-lot was proved up under the statutes of 1824 and 1812. Plaintiff says the description of Lacroix is false in the Christian name, and that the other particulars of description given in the act of Congress granting the land to the inhabitant, cultivator, and possessor, prevents the false description from injuring the title of Joseph Lacroix to the lot confirmed to him and described in the certificate as the lot of Louis Lacroix. The authorities are full that "*falsa demonstratio non nocet*" in such cases. (Thomas v. Stevens, 4 Johns. Ch. 607; Conally v. Pardon, 1 Paige Ch. R. 291; Cow. & Hill's notes to Phil. on Ev. p. 533, *n*. 940, vol. 3, § 1369; Smith v. Smith, 1 Edw. Ch. R. 189, and 4 Paige, 271; Vernon v. Henry, 3 Watts, 385; Tudor v. Terrell, 2 Dana, 47, 50–1; Wigram on Extr. Ev. 81, 122.) In Jackson v. Bonham, 15 Johns. 226, patent issued to Moses Minney. In ejectment it was held that plaintiff, claiming under Moses Winier, could prove that Winier was the person intended, under the rule "*falsa demonstratio non nocet.*" So in Dowret v. Sweet, Amble, 75:

a legacy was to John and Benedict, sons of John Sweet. John Sweet had only two sons, viz: Benedict and James. *Held*, that James might take; for, after rejecting what was false in the description, enough remained to indicate the intention of the testator and justify the application of extrinsic evidence. (Stockdale v. Bushby, 19 Ves. 381; Doe v. Huthwaite, 3 Barn. & Al. 632; Wigram on Extr. Ev. 81; Standen v. Standen, 2 Ves. Jr. 589; Smith v. Coney, 6 Ves. 42.)

The learned Justice Cowen, in commenting upon the force and effect of the rule *falsa demonstratio non nocet* (note 640, p. 533, of Phil. Ev. vol. 3, p. 1372), notices the case of Jackson v. Stanley, 10 Johns. 137, where a patent to David Hungerford, a soldier, was produced in an action of ejectment by the heirs of Daniel Hungerford, and comments upon the effect of the rule. In that case the only description besides the name was the word "soldier," and the court avoided applying the rule directly, although the evidence had been admitted and the jury had found that Daniel Hungerford was the soldier intended. As the State had granted the land subsequent to the patent to Daniel Hungerford and his heirs, there was no occasion to enforce the rule of evidence we contend for; for, as the title passed by the act of the Legislature of New York, if the patent was void, as contended by defendant, the plaintiff must recover without invoking the rule *falsa demonstratio non nocet*. A critical examination of the opinion shows that the ancient opinion that a grant is void where there is a mistake in the Christian name is repudiated.

Lord Coke is cited, Co. Litt. 3 *a*, as stating the law correctly— " that if lands be given to Robert, Earl of Pembroke, when his name is Henry, or to George, Bishop of Norwich, when his name is John, the grant is still good, because there can be but one of that name and dignity." The court proceeds: " If, then, the patent in this case had designated the Hungerford intended by specifying the regiment and company to which he belonged at the time of his death, it might have been good as being equally susceptible of being reduced to a certainty. But the patent adds no description or demonstration to the name of the patentee. It is simply a patent of the lot to David Hungerford," etc. The

learned Chief Justice thus admits that a misnomer does not avoid a patent where there is some description connected with the name by which to designate the person intended.

In Jackson v. Goes, 13 Johns. 524, it was held, unanimously, that the identity of the patentee is a matter "that may be inquired into, in an action of ejectment, collaterally;" that the doctrine was settled by the case of Jackson v. Stanley, 10 Johns. 126, and that the case of Jackson v. Hart, 12 Johns. 77, was not intended to overrule the case of Jackson v. Stanley. The case of Jackson v. Goes overruled in effect the case of Jackson v. Hart, and the doctrine explained by Mr. Chief Justice Thompson is clearly the law of evidence as established by modern authorities. (See opinion of Mr. Chief Justice Thompson.)

The case of Jackson v. Lawton, 10 Johns. 23, cited by Mr. Chief Justice Scott in support of his opinion that the confirmation certificate is void by reason of the latent ambiguity in the false denomination of the Christian name, has no bearing upon the question at issue. The controversy in Jackson v. Lawton was between two patents—one dated October 28, 1811, to Mr. Mancius; the other, March 5, 1812, to Mr. Allen; and both for same lot No. 128. The action was ejectment, and the court held the elder patent was the better title, and in an action at law its validity could not be questioned.

Plaintiff does not seek to impeach a patent in this action. He merely asks the court to hear the evidence that his grantor is the person entitled to the certificate under the act of Congress of 1824, and that he is the person confirmed under the act of 1812, and the only person who answers the descriptive terms of said acts granting the title. In Jackson v. Stanley, 10 Johns. 136, the precise question arose that arises in this case. Chief Justice Kent, who delivered the opinion in Jackson v. Lawton, delivered the opinion in this case. (See comments by Hon. Esek Cowen, note 950, vol. 3, 2d ed. Phil. Ev.)

The case of Jackson v. Lawton, and that of Jackson v. Hart, 12 Johns. 81, based upon that of Jackson v. Lawton, were finally disposed of in Jackson v. Boneham, 15 Johns. 226, already referred to. These cases settled the law in New York. The question

never was raised again until 1828, in the case of Jackson v. Cody, 9 Cow. 140, and it was again settled in favor of the rule invoked by plaintiff. There is a far stronger case presented here for the plaintiff than in any case cited.

The certificate of the proof of inhabitation, cultivation, and boundaries, issued in 1825 to Louis Lacroix, had special reference to the act of 1812, by which the title passed, and the descriptive terms of the act are and were a part of the certificate of proof of confirmation. The act is made part of the certificate by express recital, so that the certificate is to Louis Lacroix, an inhabitant of St. Louis before 1803, who cultivated a field-lot in the Grand Prairie fields belonging to St. Louis, and adjoining Barribeau's lot on the south, before 1803. The parol proof shows who this Louis Lacroix is, by proving to a certainty that the inhabitant and cultivator, before 1803, of the field adjoining Barribeau, was Joseph Lacroix, and no other person, and that he was the man who made the proof before Hunt in 1825, and to whom Hunt delivered the certificate.

HOLMES, Judge, delivered the opinion of the court.

This case has already been twice before this court: 28 Mo. 453 ; 35 Mo. 52. There are some preliminary questions to be disposed of. It is made to appear by the record that previous to the last trial the plaintiff asked leave to file an amended petition, and leave was refused. This amended petition contained certain statements of facts, looking to equitable relief, combined and blended in the same count, with a cause of action in ejectment under the statute, or rather statements of facts which were more properly matters of evidence. The plaintiff does not complain that there was any error in refusing to allow this amended petition* to be filed. The case appears to have been tried as an action of ejectment on the original petition, and so it will be considered here. (Billon v. Larimore, 37 Mo. 386 ; Peyton v. Rose, 41 Mo. 261.)

---

* Application was made by plaintiff's counsel, at the second trial, to file the amended petition referred to, and leave was refused. At the last trial leave was obtained and the amended petition filed.

The case appears to have been tried before the court sitting as a jury. Both parties were present, and submitted the cause to the court on the evidence. It does not appear that either party demanded a jury. It may be presumed that the right of trial by jury was waived. (Vaughn v. Scade, 30 Mo. 600 ; Brown v. Hann. & St. Jo. R.R. Co:, 37 Mo. 299.)

The verdict contains a recital of the particular facts found to have been established by the evidence, but it is essentially nothing more than a verdict for the plaintiff on the issues in the case, with an assessment of the damages and monthly value of the premises ; and judgment is given for the possession, damages, monthly value, and costs.

The verdict rendered may be considered as a finding of the particular facts from which, as facts proved, the court sitting as a jury had inferred and found for the plaintiff the main fact in issue, namely: that the plaintiff was entitled to the possession of the premises in controversy.

The more material fact in dispute under the issue would seem to have been shortly this: whether it was Joseph Lacroix, under whom the plaintiff claimed, who appeared before the recorder of land titles, in 1825, as the claimant of the lot in question, and proved this claim, and was the identical person and claimant to whom the certificate of confirmation was in fact issued by the name of Louis Lacroix.

The sufficiency of the evidence to warrant the finding, if extrinsic and parol evidence were admissible at all, for the purpose for which it was offered, can scarcely admit of question. It was enough to justify a moral conviction in the mind of the jury of the truth of the matter found. It may be said that it was sufficient to raise an irresistible presumption of the truth of that matter. We cannot say that the verdict was not warranted by the evidence. We do not understand that error is claimed on this ground.

We come, then, to the question whether extrinsic evidence was admissible at all with reference to the person named in this certificate. The former decisions in this case are first to be considered. In the first decision the majority of the court appear

to have rested the reversal of the judgment upon the state of facts presented on that record. The opinion delivered by Scott, J., shows that the case had been tried " on the theory that Louis and Joseph Lacroix were different persons," there being evidence that " there were two such individuals in St. Louis." It was said that the circumstances of the case did not " warrant the application of the principle that by parol evidence one may show that he is the person named as a grantee or patentee." The ground of the decision appears to have been that, on the state of facts before the court, Joseph Lacroix could not be permitted to prove by extrinsic evidence that he was " the person intended," or was " the person for whom the bounty was intended," and thus take away the title from Louis, in whom it had been vested by the instrument, and transfer it to Joseph, in whom it had not been vested. The stress was laid upon the *intention*. This is the principle that is applied to wills: that parol evidence is inadmissible for the purpose of proving that a thing in *substance* different from that described was *intended*, or of changing the person described, or, generally, of proving *intention*. (Wigram on Wills, 89–92.) The position was illustrated from the cases of patents. It was conceded that parol evidence would be admissible to prove that *George Housman* and *George Hosmer* were the same person, but not to prove that a grant to the former, a real person, was intended for the latter, another person. Richardson, J., granted this point, and concurred in the reversal, on account of the admission of improper evidence ; but expressed the opinion that, " if Joseph Lacroix was the person who appeared before the recorder and made the proofs, and the recorder intended to give him the certificate of confirmation, but by a mere mistake wrote the name of *Louis* instead of *Joseph*, then Joseph or his representatives, on showing these facts, ought to be permitted to take the benefit of the certificate of confirmation. We think it may fairly be inferred that the state of the case here supposed was not distinctly presented on that record.

It appears that the second decision was placed upon precisely the same ground as the first, and was predicated on the same state of facts ; and it was said, " this judgment and the former

decision cannot stand together." Upon that state of the case, and upon that ground, we should probably entertain the same opinion and decide the case in the same way.

The case as now presented before us on this record is certainly quite different. The fact is found, on ample evidence, that there were not two persons — inhabitants of the town of St. Louis, claiming a lot in the Grand Prairie common field of St. Louis, upon inhabitation, cultivation, or possession, prior to 1803, before that date or afterward — one named Louis Lacroix, and the other Joseph Lacroix, either of whom might have been confirmed in his claim, or might have proved this claim and been entitled to this certificate; but it was proved and found that the man Louis Lacroix, under whom the defendant claims, was an inhabitant of St. Charles, and died long before this claim was proved, and that he never had been an inhabitant of the town of St. Louis, nor a claimant of a lot in the Grand Prairie common field of St. Louis, within the meaning of the acts of Congress. It is thus clearly shown that he never came within the class of persons contemplated by those acts. It does not appear that, during his lifetime, he ever pretended to have such a claim. The idea seems to have originated with his heirs. Parol evidence was admissible by all the authorities to show that he was not the person named in the instrument, but an impostor. It has been so held even in the case of a patent. (Jackson v. Stanley, 10 Johns. 133 ; Jackson v. Goes, 13 Johns. 518.) It is certain that he could take no benefit by this certificate. It conferred no right on him, and the defendant is left standing on a bare possession, showing no other title.

The next question is whether the certificate could be made available to Joseph Lacroix by extrinsic evidence. It is not a question of the intention of the government or of the recorder, *dehors* the instrument. It is simply a question of the identity of the person Joseph Lacroix with the person named and described in the certificate. The ambiguity arises only when the instrument comes to be applied to the person. The proof ascertains that there was no other person within the class to whom it might have been given but this identical Joseph Lacroix. It shows further, and irresist-

ibly, that it was this man Joseph Lacroix who actually appeared before the recorder as the claimant, and made proof of this claim, and received the certificate, and whose name was mistakenly written Louis, instead of Joseph, in the minutes, the registry, and the certificate. There were other words of description of the person in these documents besides the bare name. The minutes read, "Louis Lacroix, claiming one by forty arpents, a field-lot in Big Prairie, St. Louis, bounded," etc.; and the certificate reads that, under the acts of Congress, Louis Lacroix "was confirmed in his claim to a tract of land of one by forty arpents, situated in the Grand Prairie common field of St. Louis," with a survey of the boundaries. Now, strike out the word "Louis," and the question becomes simply this: whether enough remains to admit of the application of the principle *falsa demonstratio non nocet.* It is not merely Louis Lacroix, but the man Lacroix who was claiming this lot before the recorder on that day, and causing it to be proved, and to or for whom this claim was registered as proved, and this certificate delivered. This was enough, we think, to let in the proof that was made. We think the extrinsic evidence was admissible, both on this principle and on the principle of identifying the person named. The authorities, we conceive, fully justify this position. ( Price v. Page, 4 Ves. Jr. 680 ; Beaumont v. Fell, 2 P. Will. 140 ; Jackson v. Goes, 13 Johns. 578 ; Still v. Hoste, 6 Madd. 123 ; Miller v. Trayers, 8 Bing. 248 ; Hiscocks v. Hiscocks, 5 Mees. & W. 370 ; Jackson v. Cody, 9 Cow. 147 ; Tucker v. Seamen's Aid Society, 7 Met. 188 ; Tudor v. Terrell, 2 Dana, 47 ; Abbott v. Massie, 3 Ves. 148 ; Thomas v. Stevens, 4 Johns. Ch. 307 ; Parsons v. Parsons, 1 Ves. Jr. 266 ; 1 Greenl. Ev. § 291, n. 4 ; 2 Phil. Ev., Cow. & H. notes, 4th ed. 761, 770–3 ; 1 Spence's Eq. Jur. 539.)

The case of Beaumont v. Fell, so far as it admitted the testator's declarations of intention, has been overruled; but so far as it sanctioned the admissibility of proper extrinsic evidence for the purpose of identifying the person named, when the words of the instrument came to be applied to the person, it seems to have been approved by nearly all the later authorities.

The matter is properly to be considered with reference to the

nature of the instrument. It is peculiar to the land titles of this State, under the acts of Congress. It has been the policy of the courts to uphold these titles, and to give to the documentary evidence issued by the government under these acts all the effect that can reasonably be given to it, consistently with the rules of law and the general principles governing the admissibility of evidence. Precedents from other States furnish only remote analogies. General principles may serve as a guide. The cases refer to patents, deeds, wills, written contracts, or depositions.

The certificate may be likened, in some particular respect, to either of these things, but, strictly speaking, it is neither one nor the other of them. We are to consider, not what it is like, but what it is. It is simply a certificate in writing, under the hand of the recorder, issued by statute authority. It does not convey title; it is merely *prima facie* evidence of the existence of certain facts at a former date, and it may be rebutted or disproved by other competent evidence. (Gurno v. Janis, 6 Mo. 330; Montgomery v. Sandusky, 9 Mo. 705; Biehler v. Coonce, 9 Mo. 343; McGill v. Somers, 15 Mo. 86; Joyal v. Rippey, 19 Mo. 660; Soulard v. Allen, 18 Mo. 590; Soulard v. Clark, 19 Mo. 570.) When offered in evidence, it speaks like a witness or a deposition. It is not of the nature of best evidence, nor is it the only admissible evidence. The same facts may be proved by living witnesses, or by other competent evidence. The registry of certificates has been held equally admissible to prove the same facts. Here, the other evidence fails to prove all the necessary facts without the certificate. In such case it was regarded by Scott, J., as "the highest evidence of title which could emanate from the government;" no patent was required, and he said the title was "evidenced by the certificate of confirmation." The title passed by the act of 1812, *proprio vigore;* and unless this document be available the party loses his title In its effect, therefore, it is equivalent, in this case, to a patent. Yet it is nòt a patent, nor a record on which a *scire facias* would lie. If the plaintiff can show that he was the person named and designated, why should he not have the benefit of this instrument? If a deposition had contained the same mistake, there could be no

question but that another witness or deposition would be admissible to correct the error.

As presented on this record, it is not the case of two claimants, of the same or different names. It is not the case of two different persons, both falling within the class contemplated, one of whom is correctly named and described, and the other not. It is not the case of taking away the title from the person in whom it is vested by the conveyance, and transferring it to another person in whom it is not vested by the conveyance as it is written. We cannot doubt that extrinsic evidence was admissible, when this document was offered in evidence, to show, first, that the man Louis Lacroix, under whom the defendant claimed, was not the person named and described; and second, to show further that the man Joseph Lacroix, under whom the plaintiff claimed, was in fact the person named and described in the instrument by the name of *Louis* Lacroix, and by his further designation as the claimant of this lot in the Grand Prairie common field of St. Louis before the recorder in 1825, under the acts of Congress, who had made proof of his claim to the satisfaction of that officer, and had received this certificate, which certifies the fact that he was confirmed in his claim by the act of 1812. As it was said by Scott, J., in the case of The City of St. Louis v. Toney (21 Mo. 255), it is "the right and claim to a lot inhabited, cultivated, or possessed, prior to the 20th December, 1803," that is confirmed by that act. None but a claimant of such a claim came within its purview. The verdict finds that the claimant was Joseph Lacroix.

The question of the admissibility of "Hunt's minutes" has been the subject of decision or comment in several cases. (Gamache v. Pequignot, 17 Mo. 310; City v. Toney, 21 Mo. 255; Clark v. Hammerle, 27 Mo. 71; 36 Mo. 639.) It has been held that they should not be read, against objection, as a deposition to prove the facts testified to by the witnesses therein. They do not appear to have been read for this purpose in this case. No exception is taken on that account. An attentive examination of the case will show that the admissibility of these records in any case must depend upon the general principles of

the law of evidence governing the relevancy or competency of the evidence on the issues to be tried between the parties. Like any other record or official document, it must be admissible to show what it contains; but whether or not what is contained is relevant or competent on the issues in the case, must be determined by the general rules of evidence. In Gamache v. Pequignot these minutes and the documents relating to the claim were excluded, on the ground that, as the recorder had omitted to enter the claim in his registry of certificates or list of claims proved, the law would draw the conclusion that the claim had not been proven to his satisfaction. There is no question here but that this claim of Lacroix had been registered as a claim proved and confirmed. In the minutes, in the registry, and in the certificate, the claim runs in the name of Louis Lacroix. The minutes show that a person named Joseph Lacroix was present before the recorder on the day when this claim was proved, and signed his name *Joseph Lacroix* to his deposition as a witness proving the claim of Pierre Barribeau (the witness that proved this claim), in which deposition the recorder had written the name of the deponent as *Louis Lacroix;* and that the boundaries of the two claims of Lacroix and Barribeau called for each other on the north and south. We are of the opinion that this context of the record was relevant and competent evidence on the issues in this case; it was properly to be weighed by the jury for what it was worth in connection with the other testimony. It appears that this document was admitted to be read to prove "notice of the claim, and for no other purpose," and that it was wholly excluded in the verdict rendered. The error, whatever it may have been, was an error against the plaintiff, of which the defendant cannot complain.

The other evidence, and especially the testimony of A. H. Evans, with this record before him, furnished proof that might well be deemed satisfactory, if not wholly irresistible, that the person who appeared before the recorder on that day, in company with Barribeau, and caused this claim to be proved by him as witness, and who signed his name *Joseph* to the deposition running in the name of *Louis* in support of Barribeau's claim, on the same day, was the man Joseph Lacroix, and that it was this person and no

other who claimed and proved this lot and received this certificate in which his name was written *Louis* Lacroix by mistake. This proof must be held sufficient, unless the name is to be regarded as more important than the person designated — words as more important than the thing signified — *nihil facit error nominis, cum de corpore constat.*

The judgment will be affirmed. The other judges concur.